William R. BROWN, Plaintiff/Appellant,

v.

CITY OF MANCHESTER, Tennessee, Defendant/Appellee.

Court of Appeals of Tennessee, Middle Section, at Nashville.

Sept. 25, 1986.

Permission to Appeal Denied By Supreme Court Dec. 29, 1986.

Rick L. Moore, Russell D. Hedges, Robertson, Worsham, Moore & Hedges, Tullahoma, for plaintiff/appellant.

Alec Garland, Manchester, for defendant/appellee.

## OPINION

KOCH, Judge.

This appeal involves the efforts of the former Director of Parks and Recreation for the City of Manchester to be paid for the compensatory time he accumulated while employed by the City. The former director brought this action in the Chancery Court for Coffee County seeking to recover the value of this leave time after the City refused to keep him on its payroll until this leave was used up. The City filed a Tenn.R.Civ.P. 56 motion for summary judgment asserting that its own compensatory leave policy was invalid. The trial court granted the City's motion and dismissed the complaint. The former director

has perfected this appeal. We vacate the summary judgment because the City has not conclusively demonstrated that it is entitled to a judgment as a matter of law.

### I.

The City of Manchester hired William R. Brown on April 1, 1980 as its Director of Parks and Recreation. He was the only full-time, salaried employee of the Recreation Department for the first eighteen months of his employment. The scope and nature of his work were controlled by the City's Recreation Commission, and Mr. Brown asserts that his duties required him to work longer hours than the City's normal forty hour work week. The City does not deny this.

On August 28, 1981, the Mayor of Manchester sent a letter to all of the City's department heads on the subject of overtime pay. This letter, which was intended to be "simply a clarification of existing law" stated:

> Effective immediately, it is my policy that City employees that are on salary pay scale, as opposed to hourly wage scale, will not be paid "time and one-half" for any reason.
>
> Additionally, salaried employees will not be paid "straight" time for extra work performed outside the normal duty hours without my specific approval. Salaried employees may be granted compensatory time off [1] for work performed outside of normal duty hours.
>
> Those employees on hourly wage scale will be paid "time and one-half" for work performed over forty (40) hours per week or holiday work.

The City concedes that this letter was issued after it was required to compensate a salaried employee at the rate of one and one half times his regular rate of pay for additional work.

Brown asserts that this letter was circulated to all department heads, posted upon

---

1. While the term "compensatory time off" is not defined in the mayor's letter, it generally refers to time off with pay earned by an exempt or nonexempt employee when compensable overtime hours are worked and are not compensated in cash.

city bulletin boards, and followed by the City's various departments, particularly the fire and police departments. Brown also alleges that the members of the Board of Mayor and Aldermen were aware of this letter even though the policy contained in it was never formally promulgated by the Board as a city ordinance.

Brown also alleges that he and other city employees started to earn and use compensatory time after the mayor's August 28, 1981 letter was issued. He asserts that he kept detailed records concerning the accrual of his own compensatory time. Thus, in 1981 after the issuance of the letter, Brown states that he accrued 188 hours of compensatory time and used 64 hours. Likewise, he states that in 1982, he accrued 925 hours of compensatory time and used 185 hours and that in 1983, until he ceased working, he accrued 381 hours and used 70 hours. Accordingly, Brown claims that he accumulated 1,175 hours of compensatory time from the time the mayor's letter was issued until the time he resigned. The City does not specifically dispute Brown's figures.

Brown submitted his letter of resignation to the City on August 10, 1983. In this letter, he requested credit for two weeks of earned but unused vacation time and thirty-two weeks of accrued compensatory time. Thus, he stated that the effective date of his resignation would be April 6, 1984.

Apparently, the City compensated Brown for his unused vacation time but refused to pay him for his accumulated compensatory time. Brown filed this action

> for the purpose of recovering the monetary value of Plaintiff's compensatory time which was accumulated during the period of August 31, 1981, through August 2, 1983, in the aggregate amount of 1,175 hours.

The City, in its answer, did not deny Brown's allegations concerning the work he had performed for the City and admitted that the mayor had issued the August 28, 1981 letter. However, the City asserted as a defense to Brown's claim that

the mayor is powerless to issue an Executive Proclamation or to authorize compensatory time off for work performed outside of normal duty hours for salaried employees without such an authorization having been first passed by four members of the Manchester Board of Mayor and Aldermen, as required by the City Charter.

The City also filed a Tenn.R.Civ.P. 56 motion for summary judgment supported by the city recorder's affidavit to the effect that the minutes of the meetings of the City's Board of Mayor and Aldermen do not contain any reference to a "compensatory time off policy." The remainder of the affidavit contains the city recorder's opinions about the mayor's authority and about the merits of Brown's complaint. These opinions are incompetent and irrelevant.

The trial court granted the City a summary judgment. While the order does not specify the basis for the decision, the trial court appears to have based its decision upon the City's theory that the policy contained in the mayor's August 28, 1981 letter was unenforceable because it was not promulgated as a city ordinance.

## II.

This is an appeal from a summary judgment. Thus, our role is not to conduct a Tenn.R.App.P. 13(d) review but rather to determine whether the summary judgment meets the standards set forth in Tenn.R. Civ.P. 56. *Hill v. City of Chattanooga,* 533 S.W.2d 311, 312 (Tenn.Ct.App.1975). Tenn.R.Civ.P. 56.03 requires a party seeking a summary judgment to demonstrate that there are no material factual disputes and that it is entitled to a judgment as a matter of law. *Celotex Corp. v. Catrett,* — U.S. ——, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986) and *Jones v. Home Indemnity Insurance Co.,* 651 S.W.2d 213, 214 (Tenn.1983). Accordingly, our function is to review the record and to determine independently whether the undisputed facts entitle the City to a judgment as a matter of law.

The City's motion for summary judgment appears to embody only one defense. It asserts that Brown cannot prevail under any theory because its mayor did not have the authority to bind the City to provide compensatory time benefits when he issued his August 28, 1981 letter. It is thus attacking the authority of its own representative and the enforceability of its own policy.

Defenses predicated upon a local governmental body's challenge to the legality of its own actions have met with little success. The record in this case contains two independent reasons to conclude that the City has not carried its burden of demonstrating that it is entitled to a judgment as a matter of law.

■ The first reason is that Brown's ability to recover does not rest solely upon the existence of a written or express contract that meets all the technical requirements for local governmental contracts. Our courts have recognized that a city may be held liable on a *quantum meruit* or implied contract theory for valuable services it has received in accordance with a contract or agreement that proves later to be technically invalid. *London & N.Y. Land Co. v. City of Jellico*, 103 Tenn. 320, 322–23, 52 S.W. 995 (1899) and *Carter County v. Williams*, 28 Tenn.App. 352, 361–62, 190 S.W.2d 311, 315 (1945). This Court has also recognized in similar situations that a city may be estopped to assert the technical invalidity of a contract caused by its own dereliction when it has already benefitted from valuable services provided by a person who expects to be compensated. *Trull v. City of Lobelville*, 554 S.W.2d 638, 642 (Tenn.Ct.App.1976).

■ The second reason why the City is not entitled to a summary judgment is found in the City's pleadings. While on one hand it asserts that the compensatory time policy contained in the mayor's August 28, 1981 letter was invalid because it was not enacted as an ordinance, it states on the other hand that this letter was "simply a clarification of existing law." If, in fact, the City has a compensatory time off

policy as part of its "existing law," then Brown may be entitled to recover notwithstanding the status of the mayor's letter. This internal conflict in the City's answer is, by itself, a sufficient reason to conclude that a material dispute exists concerning the existence and terms and conditions of the City's compensatory time policy.

### III.

The City's only defense of the trial court's action is its assertion that Brown's pleadings state only a cause of action based upon an express contract. Thus, it argues that Brown cannot rely upon either an implied contract or estoppel theory for the first time on appeal. Other than the City's assertions about what transpired in the trial court, this record is silent concerning what transpired before this appeal reached this Court. Therefore, our determination of the viability of Brown's complaint must be based upon the pleadings themselves and the papers filed in the trial court that have been incorporated in the appellate record.

■ This Court has no duty to create a claim the pleader does not spell out in its complaint. *Donaldson v. Donaldson*, 557 S.W.2d 60, 62 (Tenn.1977). However, we will give effect to the substance rather than the form and terminology of a pleading. *Usrey v. Lewis*, 553 S.W.2d 612, 614 (Tenn.Ct.App.1977) and *Wheeler v. City of Maryville*, 29 Tenn.App. 318, 321–22, 203 S.W.2d 924, 925–26 (1947). All that Tenn. R.Civ.P. 8.01 requires is that a complaint contain a short, plain statement of a claim showing the pleader is entitled to relief along with a claim of damage. *Adams v. Carter County Memorial Hospital*, 548 S.W.2d 307, 308–09 (Tenn.1977).

We have reviewed Brown's complaint and have determined that its allegations make out not only a contractual cause of action but also a cause of action based upon *quantum meruit* or implied contract. In light of Brown's allegations that the City's governing body knew of the mayor's letter and acquiesced in its implementation

for over two years, the complaint is also sufficient to support an assertion that the City is now estopped to deny the validity of its policy insofar as Brown is concerned.

### IV.

Nothing in this opinion should be construed as a determination that Brown is entitled to the relief he seeks. We determine only that granting the City a summary judgment was improper. Thus, the summary judgment is vacated, and the case is remanded for further proceedings. The costs of this appeal are taxed to the City of Manchester.

TODD, P.J., and CANTRELL, J., concur.