Marjorie Gale FANN, Plaintiff/Appellant,

v.

CITY OF FAIRVIEW, Tennessee, Eugene Leroy Brailey, Robert M. Odom, Bill Shanes, and Franklin Publishing Company, Inc. d/b/a The Review Appeal, Defendants/Appellees.

Court of Appeals of Tennessee, Western Section, at Nashville.

Nov. 18, 1994.

Application for Permission to Appeal Denied by Supreme Court Feb. 27, 1995.

John E. Herbison, Nashville, for plaintiff/appellant.

Van French, Howell, Fisher & Branham, Nashville, for defendants/appellees City of Fairview, Brailey, Odom, and Shanes.

James C. Cope and Jeff Reed, Murfree, Cope & Moore, Murfreesboro, for defendant/appellee Franklin Publishing Company.

FARMER, Judge.

This appeal is a result of litigation pursued by Appellant, Marjorie Gale Fann (Fann) against the appellees, City of Fairview, Tennessee (City), Eugene Leroy Brailey (Brailey), Robert M. Odom (Odom), Bill Shanes (Shanes) and the Franklin Publishing Company, Inc., d/b/a *The Review Appeal* (Franklin Publishing). Fann has alleged violations of her federal civil rights under 42 U.S.C. § 1983 as well as state statutory and common law. The underlying facts are as follows: In the summer of 1987, Fann ran for the office of city commissioner for the City of Fairview. During the campaign, Fann openly criticized Brailey, Odom and Shanes, employees of the City, as well as its police department in general. After learning that Fann might have a criminal history, Brailey, as city manager, instructed Police Chief Odom to conduct an investigation into Fann's background. Odom directed Lt. Shanes to conduct the investigation which began no later than June 1, 1987. Contacts were made with the FBI, the Metropolitan Police Department in Nashville and the Tennessee Department of Corrections. The investigation led to the discovery that Fann was also known as "Marjorie Gale Berard;" that she had been convicted for armed robbery in 1971; that the conviction was reversed by the Tennessee Supreme Court due to insuffi-

cient evidence in 1973; and that she was released from prison. The probe also uncovered Fann's 1983 arrest by the Metropolitan Police Department for a telephone code violation. This charge was dismissed and the arrest records ordered expunged by the General Sessions Court of Davidson County.

On August 7, 1987, an article appeared in *The Review Appeal* entitled "Candidate Won Appeal, Served Time." It related Fann's conviction for armed robbery and the subsequent reversal by the Supreme Court. The article also revealed the results of prison psychological studies regarding Fann, her use in 1970 of her former husband's name, Berard, and the 1983 arrest for harassing telephone calls, acknowledging that this charge was subsequently dropped. The article included a mug shot of Fann taken by the Nashville police department in connection with the 1983 arrest. A subsequent editorial appeared in *The Review Appeal* on February 12, 1988 again recounting Fann's 1971 conviction and its reversal.[1]

The publications led to Fann's complaint, filed in April 1988, which specifically alleged that the individual appellees "unlawfully combined and conspired" to punish her for the exercise of her First Amendment rights in criticizing the local government and to deter her future exercise of such rights. It was asserted that it was a custom of the City for its police officers to harass and intimidate critics of the incumbent municipal administration to stifle the exercise of First Amendment rights under color of law. Fann alleged that the information gathered in the investigation, some of which had been declared confidential by state or federal statute, was disclosed by one or more of the appellees Brailey, Odom and Shanes or their agents to *The Review Appeal.* Fann alleged that such conduct violated T.C.A. § 40–32–101(c)(1) [2] and was negligence per se. She further claimed a violation of T.C.A. § 10–7–504.[3] Fann asserted that she had endured public humiliation and a loss of reputation in her community as well as severe mental and emotional distress due to the conduct of the appellees. Fann amended the complaint to assert a § 1983 violation against the City.

For answer, the City and the individual appellees admitted conducting an investigation "based upon inquiries and complaints from citizens of Fairview concerning [Fann's] possible criminal background." They denied disclosure to *The Review Appeal.* They asserted, *inter alia,* a qualified immunity defense as to the § 1983 action and governmental immunity pursuant to the Governmental Tort Liability Act, T.C.A. §§ 29–20–101, et seq. as to the state law claims. Franklin Publishing admitted that it was provided information on Fann "including the police file mug shot photograph, copies of what appear to be F.B.I. records, copies of records from what appeared to be Metropolitan Police Department and materials related to the 1971 arrest and conviction. . . ." It was admitted that the two articles were published and disseminated throughout Williamson County, but liability was denied. As affirmative defenses, Franklin Publishing, asserted, *inter alia,* that the information published was absolutely privileged, true and "newsworthy" in view of Fann's decision to campaign for elected public office.

The City and the individual appellees moved for summary judgment. The trial court granted the motion as to all theories except those cognizable under 42 U.S.C. § 1983.[4] Franklin Publishing also moved for summary judgment asserting, *inter alia,* that Fann was a public figure; that the informa-

---

1. Fann does not dispute the truthfulness of the information conveyed in the two articles.

2. This section pertains to the release of expunged records.

3. This section pertains to records designated confidential.

4. The individual appellees appealed from the trial court's judgment asserting that summary judgment should have been granted as to the § 1983 claim due to a qualified immunity. This Court allowed their appeal pursuant to the "collateral order doctrine," although the judgment was not final in accordance with Rule 3(a) T.R.A.P. *See Fann v. Brailey,* 841 S.W.2d 833 (Tenn.App. 1992). We reversed the trial court and granted summary judgment as to the § 1983 claim. *Fann,* 841 S.W.2d at 837. The Supreme Court denied permission to appeal. Thus, the issue of whether the conduct of the individual appellees violated § 1983 is not before us.

tion published was part of a public record; and that it was constitutionally entitled to publish such. The motion was granted. The City filed a second motion for summary judgment requesting the court to grant summary judgment in its favor "as to all remaining claims." In December 1993, Fann filed a motion for leave to amend her complaint to allege violations of her federal constitutional and statutory rights of privacy.

On December 9, 1993, the trial court granted the City's motion for summary judgment as to the § 1983 claim. The court denied Fann's motion to amend, stating:

> The issues raised in the amendment were raised for the first time on the interlocutory appeal. . . .[5] Further, the final determination of the Tennessee Supreme Court was handed down in October, 1992, and [Fann] has waited over one year to attempt to assert any new claims in the form of an amended complaint. Under the circumstances of this case, it is simply too late to do so now.

Fann has appealed from this decision as well as "from all previous orders granting interlocutory summary judgments in favor of various [appellees] on various claims." She raises the following issues for our determination:

1. Whether the trial court erroneously granted summary judgment in favor of the Defendant Franklin Publishing Company, Inc.

2. Whether the trial court erroneously granted summary judgment in favor of the Defendants Eugene Leroy Brailey, Robert M. Odom and Bill Shanes as to the Plaintiff's claims arising other than under 42 United States Codes § 1983.

3. Whether the trial court erroneously granted summary judgment in favor of the Defendant City of Fairview.

4. Whether the trial court erroneously denied the Plaintiff's motion for leave to amend her complaint in order to assert deprivation of her federal constitutional and statutory rights to privacy with regard to information held by the Defendant City of Fairview.

We first consider the grant of summary judgment in favor of Franklin Publishing. The record indicates that information regarding Fann's criminal history was published in *The Review Appeal* and disseminated. Fann alleges that the information was "private and/or confidential." She further alleges that such "public disclosure of private information" would be highly offensive to any person of ordinary sensibilities.

A common law right of action for the "wrong of invasion of privacy" was addressed in *Dunn v. Moto Photo, Inc.*, 828 S.W.2d 747 (Tenn.App.1991) wherein this Court stated:

> In *Martin v. Senators, Inc.*, 220 Tenn. 465, 418 S.W.2d 660 (1967), assuming the existence of the common law right of action for invasion of privacy, this court pointed out a condition engrafted on the action, in that:
>
> > [L]iability (for invasion of privacy) exists only if the conduct is such that a defendant should have realized it would be offensive to persons of ordinary sensibilities, and that *it is only where the intrusion has gone beyond the limits of decency that liability accrues . . . .* (Emphasis supplied.)

*Dunn,* 828 S.W.2d at 752.

In *Cox Broadcasting Corp. v. Cohn*, 420 U.S. 469, 95 S.Ct. 1029, 43 L.Ed.2d 328 (1975), the identity of a seventeen year old deceased rape victim obtained from official court records open to the public was broadcast by a television newsman. *Cohn,* 420 U.S. at 472–73, 95 S.Ct. at 1034–35. The father of the victim filed suit against the newsman who obtained the information and the television station for invasion of privacy. *Id.* at 474, 95 S.Ct. at 1035–36. The father relied upon a Georgia criminal statute making it a misdemeanor to publish or broadcast the name or identity of a rape victim. *Id.* at 471–72, 95 S.Ct. at 1034–35. In finding that liability could not be imposed, *Cohn* held:

---

5. The trial court is referring to *Fann v. Brailey,* 841 S.W.2d at 833, wherein Fann raised the issue of a constitutional right of privacy violation. This Court held that the issue could not be raised for the first time on appeal as she had neither alleged such violation in her complaint nor addressed it in her deposition as one of her rights violated. *Id.* at 837.

Thus even the prevailing law of invasion of privacy generally recognizes that the interests in privacy fade when the information involved already appears on the public record. The conclusion is compelling when viewed in terms of the First and Fourteenth Amendments and in light of the public interest in a vigorous press.

*Id.* at 494–95, 95 S.Ct. at 1046.

■ The Tennessee Supreme Court has likewise held that there can be no invasion of a common law right of privacy by publishing information which is already a matter of public record. *See Langford v. Vanderbilt Univ.*, 199 Tenn. 389, 287 S.W.2d 32, 39 (1956). The events surrounding Fann's 1971 arrest, conviction and subsequent reversal are reported in the Tennessee Supreme Court decision of *Crouch v. State*, 498 S.W.2d 97 (Tenn.1973). Consequently, we hold that there was no right of privacy violation when these events were recounted in *The Review Appeal.*

We note, however, that in *Crouch,* Fann is identified as "Marjorie Gale Berard." [6] Furthermore, the information relating to Fann's 1983 arrest was based on material ordered expunged. Thus, we continue our inquiry into whether Fann's right of privacy was violated when this additional information was published.

In *The Florida Star v. B.J.F.*, 491 U.S. 524, 109 S.Ct. 2603, 105 L.Ed.2d 443 (1989), suit was filed against the newspaper and county sheriff's department for the release and publication of a rape victim's name. *Florida Star,* 491 U.S. at 526–28, 109 S.Ct. at 2605–06. The information was obtained from a publicly released police report. *Id.* at 526, 109 S.Ct. at 2605. Under Florida statute, it was unlawful to "print, publish or broadcast ... in any instrument of mass communication" the name of a victim of a sexual offense. *Id.* & n. 1. The newspaper asserted that it was violative of the First Amendment to impose civil sanctions on it for publishing the victim's name. *Id.* at 528, 109 S.Ct. at 2606.

The Supreme Court first distinguished *Florida Star* from *Cohn* by acknowledging that the information received in the latter was obtained from courthouse records that were open to public inspection. In *Florida Star,* the information was obtained from "a police report prepared and disseminated at a time at which not only had no adversarial criminal proceedings begun, but no suspect had been identified." *Id.* at 532, 109 S.Ct. at 2608. In ruling in favor of the newspaper, the Supreme Court relied upon its prior decision of *Smith v. Daily Mail Publishing Co.*, 443 U.S. 97, 99 S.Ct. 2667, 61 L.Ed.2d 399 (1979), which held, "[I]f a newspaper lawfully obtains truthful information about a matter of public significance then state officials may not constitutionally punish publication of the information, absent a need to further a state interest of the highest order." *Florida Star,* 491 U.S. at 533, 109 S.Ct. at 2609 (quoting *Daily Mail,* 443 U.S. at 103, 99 S.Ct. at 2671).

Fann has not alleged that *The Review Appeal* unlawfully obtained the information. She does argue to this Court, however, that the information pertaining to the 1983 arrest was unlawfully obtained as it had been expunged at the time of receipt. *Florida Star* addresses this point as well in holding that the sheriff department's apparent failure to abide by state statute prohibiting the publication of a sexual offense victim, did not "make the newspaper's ensuing receipt of this information unlawful." *Florida Star,* 491 U.S. at 536, 109 S.Ct. at 2611. The court continued, "[e]ven assuming the Constitution permitted a State to proscribe *receipt* of information, Florida has not taken this step." *Id.* The Court reasoned:

To the extent sensitive information is in the government's custody, it has even greater power to forestall or mitigate the injury caused by its release. The government may classify certain information, establish and enforce procedures ensuring its redacted release, and extend a damages remedy against the government or its officials where the government's mishandling

6. Fann alleges in her complaint that prior to her marriage in 1981 to John Fann, she was known in her community as Marjorie Gale Gibson and that prior to August 1987, "it was not a matter of common knowledge in Fairview or Williamson County" that she was once known as Marjorie Gale Berard.

of sensitive information leads to its dissemination. Where information is entrusted to the government, a less drastic means than punishing truthful publication almost always exists for guarding against the dissemination of private facts....

.... But where the government has made certain information publicly available, it is highly anomalous to sanction persons other than the source of its release.

*Id.* at 534–35, 109 S.Ct. at 2609–10.

■ We hold that *The Review Appeal's* receipt of the information, including the expunged material, was not unlawful. As will be addressed more thoroughly in a separate part of this opinion, Tennessee also has not taken steps to proscribe the "receipt" of this type information. Tennessee's expungement statute speaks only in terms of its "release." We further hold that the newspaper articles clearly concerned "a matter of public significance" as the truthful information concerned a candidate for public office. Nor do we find a need to further a state interest of the highest order by sanctioning *The Review Appeal* for its receipt and subsequent publication of this information. As held in *Florida Star,* any punishment imposed on a newspaper for publishing truthful information lawfully obtained, must be "narrowly tailored to a state interest of the highest order." *Id.* at 541, 109 S.Ct. at 2613. The Court concluded that where the government fails to police itself in disseminating information, the imposition of damages against the press for the subsequent publication is not a narrowly tailored means of safeguarding anonymity. *Id.* at 538, 109 S.Ct. at 2611–12.

■ We reiterate that Fann's allegations as to Franklin Publishing merely concern the newspaper's receipt of this information. Moreover, the record fails to suggest that the newspaper, on its own initiative, wrongfully

discovered the information. As such, we do not find the mere lawful receipt and subsequent publication of truthful information regarding a candidate for public office, absent more, to go beyond the limits of decency contemplated in *Dunn v. Moto Photo* or *Martin.*

■ As this is an appeal from a summary judgment, we must view the evidence in a light most favorable to Fann and draw all legitimate factual conclusions in her favor. *See Spears v. Commercial Ins. Co.,* 866 S.W.2d 544, 547 (Tenn.App.1993). Having done so, we determine that no genuine issues of material fact exist and that the trial court correctly granted summary judgment to Franklin Publishing.

■ We now address the trial court's grant of summary judgment in favor of the City. Ms. Fann has alleged a § 1983 violation.[7] In *Fann v. Brailey,* it was concluded that the individual appellees were entitled to a qualified immunity to Fann's claim that her First Amendment right to free speech had been violated.[8] The United States Supreme Court in *Owen v. City of Independence,* 445 U.S. 622, 100 S.Ct. 1398, 63 L.Ed.2d 673 (1980), found that no "tradition of immunity" existed for municipal corporations and that "neither history nor policy support a construction of § 1983" that would afford a qualified immunity defense to a municipal corporation. *Owen,* 445 U.S. at 638, 100 S.Ct. at 1409. *Owen* concluded that a "municipality may not assert the good faith of its officers or agents as a defense to liability under § 1983." *Id.*

Relying upon *Owen,* Fann argues that this Court is free to now consider the City's alleged liability under § 1983. We might be inclined to agree except for this court's additional holding in *Fann v. Brailey* that Fann's alleged right "did not exist." *Fann,* 841

---

7. Although Fann's complaint alleges that the City negligently employed the individual appellees, she did not pursue this theory in the trial court and there is no evidence in the record establishing such.

8. *Fann* relied upon *Harlow v. Fitzgerald,* 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982), holding that "[G]overnment officials performing

discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Fann,* 841 S.W.2d at 835 (quoting *Harlow,* 457 U.S. at 818, 102 S.Ct. at 2738).

S.W.2d at 836. This court, speaking through Judge Cantrell, specifically stated:

> While [Fann] had a right, in an abstract sense, to speak freely and to be free of retaliatory measures taken to chill the exercise of that right we know of no right that candidates for public office have to suppress truthful information of any sort of their past lives.... the right claimed by [Fann] was not well established—in our view did not exist—....

*Id.* As we have previously ascertained that Fann had no right to be violated, there can be no liability for the City under § 1983. In any event, we conclude that the record fails to establish that the conduct of the individual appellees constituted an official "policy or custom" of the City as required in *Monell v. Department of Social Services of New York*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978).[9] We hold that summary judgment was properly granted to the City.

Turning our attention to the conduct of the individual appellees, we concern ourselves only with whether summary judgment was properly granted as to the alleged state law violations.[10] Fann has alleged that Brailey, Odom and/or Shanes violated T.C.A. § 40–32–101(c)(1). The statute reads, as here pertinent:

> **Destruction or release of records.—**(a)(1) All public records of a person who has been charged with a misdemeanor or a felony, and which charge has been dismissed, or a no true bill returned by a grand jury, or a verdict of not guilty returned by a jury or a conviction which has by appeal been reversed, shall, upon petition by that person to the court having jurisdiction in such previous action, be removed and destroyed....
>
> ....
>
> (b) "Public records," for the purpose of expunction only, does not include arrest histories, investigative reports, intelligence information of law enforcement agencies, or files of district attorneys general that are maintained as confidential records for law enforcement purposes and are not open for inspection by members of the public....
>
> (c)(1) Release of such confidential records or information contained therein other than to law enforcement agencies for law enforcement purposes shall be a misdemeanor.

In *Fann v. Brailey,* the court acknowledged that "state law may have been violated in obtaining the information [on the 1983 arrest]." *Fann,* 841 S.W.2d at 836 n. 1. There is contradictory testimony as to how *The Review Appeal* received the information regarding Fann. The individual appellees all deny disclosure of such. However, Brailey's successor in office, Lewis Sullivan, states that Brailey informed him that he had personally delivered the information to *The Review Appeal. The Review Appeal* has declined to reveal its source of the information pursuant to T.C.A. § 24–1–208(a).[11]

The record includes a letter written by the chief of police of the Metropolitan Police Department in Nashville to Odom stating that the information regarding the 1983 arrest, including the mug shot, was part of a confidential record retained by the Depart-

---

**9.** *Monell* holds that "a local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents.... when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury ... the government as an entity is responsible under § 1983." *Monell,* 436 U.S. at 694, 98 S.Ct. at 2037–38.

**10.** We note that the trial court's ruling incorrectly states that this Court in *Fann v. Brailey* affirmed the dismissal of all claims against the individual appellees. A thorough reading of *Fann,* however, reveals that this Court addressed the § 1983 claim only. The opinion specifically reads, "[t]he judgment of the court below is reversed, and the 42 U.S.C. § 1983 action is dismissed as to these defendants." 841 S.W.2d at 837.

**11.** A person engaged in gathering information for publication or broadcast connected with or employed by the news media or press, or who is independently engaged in gathering information for publication or broadcast, shall not be required by a court, a grand jury, the general assembly, or any administrative body, to disclose before the general assembly of any Tennessee court, grand jury, agency, department, or commission any information or the source of any information procured for publication or broadcast.

ment on Fann and was within the purview of the expungement statute. The letter states that such information is only to be released to law enforcement agencies for law enforcement purposes only. The letter concludes by warning that the failure to utilize such information in this manner would result "in our denial of future access to such information." Additionally, the record includes Brailey's deposition wherein he admits physical possession of the investigatory file. He states that he did not relinquish possession of the file prior to returning it to the police department, although the city attorney "had it for a day or two" and the two city commissioners reviewed it. Brailey claims that he did not discuss the contents of the file with *The Review Appeal* until "after they had it."

Fann concedes that pursuant to T.C.A. § 29–20–205, the City is immune from liability for injuries arising out of the invasion of one's right of privacy. T.C.A. § 29–20–205 states as herein pertinent:

> Immunity from suit of all governmental entities is removed for injury proximately caused by a negligent act or omission of any employee within the scope of his employment except if the injury:
>
> . . . .
>
> (2) Arises out of . . . , infliction of mental anguish, invasion of right of privacy, or civil rights;

The individual appellees argue that they are entitled to the same governmental immunity afforded the City. They rely upon language found in T.C.A. § 29–20–313(a), which states that "[w]hen one (1) or more defendants to a lawsuit claims to be an employee of a governmental entity . . . and is therefore entitled to the governmental immunity granted by this chapter, it shall be a question of fact whether the defendant claiming immunity is such an employee." It is stated in *Johnson v. Smith,* 621 S.W.2d 570 (Tenn.App.1981), that "[u]nless there are specific statutory restrictions, a municipal employee is personally liable for damages caused by his negligence." *Johnson,* 621 S.W.2d at 571. T.C.A. § 29–20–

310(b) reads, in pertinent part, "[n]o claim may be brought against an employee or judgment entered against an employee for damages for which the immunity of the governmental entity is removed by this chapter. . . ." [12] In contrast, § 29–20–310(c) states, "[n]o claim may be brought against an employee or judgment entered against an employee for injury proximately caused by an act or omission of the employee within the scope of the employee's employment [13] for which the governmental entity is immune in any amount in excess of the amounts established for governmental entities . . . , unless the act or omission was willful, malicious, criminal, . . . ."

█ The Tennessee Governmental Tort Liability Act is in derogation of the common law and must be strictly construed. *Lockhart v. Jackson–Madison County Gen. Hosp.,* 793 S.W.2d 943, 945 (Tenn.App.1990). Upon construing the pertinent provisions of the Act, it is quite apparent that the governmental immunity afforded governmental entities has not been extended to the governmental employee. § 29–20–205 specifically addresses the immunity, and removal thereof, of "governmental entities." We recognize that the Act, in fact, does immunize to a certain extent the employee in instances where the entity is itself liable. However, the exception to the removal of governmental immunity applicable to the governmental entity has not been extended to the governmental employee.

█ As such, we hold that a genuine issue of material fact exists as to whether Appellee Brailey disclosed the information ordered expunged to *The Review Appeal,* violating the expungement statute. We further hold that there is evidence from which a reasonable jury could find that Brailey disclosed this information and committed the "wrong of invasion of privacy" as recognized in *Dunn.* We find the summary judgments entered in favor of the remaining individual appellees proper.

---

**12.** The statute excepts those claims for medical malpractice brought against a health care practitioner.

**13.** Fann has alleged that Brailey, Odom and Shanes were acting within the course and scope of their employment "as to any and all acts or omissions complained of."

■ We likewise hold that summary judgment was properly granted to the individual appellees as to Fann's claim for outrageous conduct.[14] As set forth in *Dunn:*

> It has not been enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct is characterized by 'malice,' or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort. Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all bounds of decency, and to be regarded as atrocious, and utterly untolerable in a civilized community.

*Dunn,* 828 S.W.2d at 751.

■ Fann's final issue concerns the trial court's denial of her motion for leave to amend her complaint. Where a motion to amend pleadings comes after responsive pleadings have been filed, it is within the sound discretion of the trial court to grant or deny the motion. This court will not reverse the trial court's decision absent an abuse of discretion or a resulting injustice. *Wilson v. Ricciardi,* 778 S.W.2d 450, 453 (Tenn.App. 1989). The record before us fails to establish error by the trial court in denying the motion.

It results that the judgment of the trial court is affirmed in part, reversed in part and remanded to the trial court for further proceedings consistent with this opinion. Costs are taxed one-half to Marjorie Gale Fann and one-half to Eugene Brailey, for which execution may issue if necessary.

TOMLIN, P.J. (W.S.), and HIGHERS, J., concur.

---

**14.** It is argued that these claims—invasion of privacy and outrageous conduct—are raised for the first time on appeal. However, as correctly pointed out by Fann, it is the duty of this Court to give effect to the substance rather than the form and terminology of a pleading. *See Brown v. City of Manchester,* 722 S.W.2d 394, 397 (Tenn.App.1986). Upon review of the complaint, we conclude that the allegations encompass these claims.