# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT KNOXVILLE
### Assigned on Briefs April 26, 2011

## STATE OF TENNESSEE v. PAUL FRED CHAPPELL

**Direct Appeal from the Criminal Court for Scott County**
**No. 9086     Eric Shayne Sexton, Judge**

---

**No. E2010-02462-CCA-R3-CD - Filed January 18, 2012**

---

A Scott County Grand Jury returned an indictment against Defendant, Paul Chappell, for sale of a Schedule III controlled substance. Following a jury trial, Defendant was convicted of the charge. The trial court sentenced Defendant as a Range III, persistent offender, to twelve years in the Department of Correction to run consecutively with the sentences in seven other cases. The trial court also imposed a $2,000 fine. On appeal, Defendant argues that the playback at trial of the audio recording of the drug transaction was incomplete and that the trial court improperly denied him a new trial based on allegations that witnesses discussed their testimony during trial. After a thorough review, we conclude that the issues raised by Defendant on appeal are waived, and we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

THOMAS T. WOODALL, J., delivered the opinion of the Court, in which JOHN EVERETT WILLIAMS, J., joined. DAVID H. WELLES, SP.J., not participating.

Robert W. Scott, Jacksboro, Tennessee (on appeal); and Howard R. Ellis, Oneida, Tennessee (at trial), for the appellant, Paul Fred Chappell.

Robert E. Cooper, Jr., Attorney General and Reporter; Rachel E. Willis, Assistant Attorney General; William Paul Phillips, District Attorney General; Thomas E. Barclay, Assistant District Attorney General; for the appellee, the State of Tennessee.

**OPINION**

**I. Background**

On May 30, 2008, Captain Larry Lay and Deputy Danny Phillips of the Scott County Sheriff's Department were involved in an investigation of Defendant Paul Fred Chappell a.k.a. "Tiger." On that day, Captain Lay had spoken with Casey Immons, a confidential informant, who called Defendant about purchasing hydrocodone. Around 9:00 p.m., Captain and Lay and Deputy Danny Phillips, a K-9 officer, met Mr. Immons and Amanda Chambers, who was also working as a confidential informant, at the Sexton Cemetery. The officers searched the two informants and their van, and a monitoring device was placed on Mr. Immons. The officers also gave the two informants $60 to buy the hydrocodone and $100 for making the purchase. Captain Lay and Deputy Phillips then followed Mr. Immons and Ms. Chambers to Kelly Buttram's residence located on Roy Lee Phillips Road and monitored the transaction.

Captain Lay recognized the voice of Defendant, whom he had known for almost ten years. Defendant said that "they needed five dollars' worth of gas and that it would cost forty-five dollars." Deputy Phillips also confirmed Defendant's voice. Ms. Chambers testified that she and Mr. Immons discussed "Hydro tens" [sic] with Defendant and Ms. Buttram, and they also mentioned "Hydros and Percocets." Ms. Chambers said, "[Mr. Immons] gave the money to Kelly and her and [Defendant] got in the car and went to Save-a-Lot to get them." She testified that Ms. Buttram was driving. Ms. Chambers said that she sat in the van while Mr. Immons spoke with Mickey Watson. Defendant and Ms. Buttram were gone for approximately forty-five minutes to one hour and then returned with some pills that Ms. Buttram gave to Mr. Immons. Defendant was standing beside Ms. Buttram when she handed over the pills. Ms. Chambers and Mr. Immons then left and met Captain Lay and Deputy Phillips back at the Sexton Cemetery. They gave the officers four pills and $15 in leftover cash from the buy. Captain Lay and Deputy Phillips again searched the two informants and their van and found nothing else. Ms. Chambers testified that Defendant was involved in all aspects of the transaction. David Holloway, a forensic drug chemist with the Tennessee Bureau of Investigation, tested the drugs in this case and determined that the tablets contained hydrocodone, a schedule III controlled substance.

Kelly Buttram testified that she and Defendant have been friends for quite a few years, and she was living at 137 Roy Lee Phillips Road in May of 2008, with Defendant, her three children, and Mickey Watson. She said that Defendant had lived with her on and off for four years. After listening to the recording of the transaction, Ms. Buttram recalled that Mr. Immons and Ms. Chambers had come to her house in May of 2008 to buy pills from her and Defendant. She said that the two gave them money for ten milligram hydrocodones. Ms.

Buttram testified that everyone knew what was going on and that Mr. Immons, Ms. Chambers, Mickey Watson, Defendant, and herself were present. She did not recall the details of the transaction, but the tape indicated that Ms. Chambers gave her the $60.00. She said that $5 was for gas. Ms. Chambers testified that she and Defendant then left in her Thunderbird, but she did not remember if she drove to Save-a-Lot. She said that it was not the first time that she and Defendant had made that type of buy, and they would get drugs from various people. She also said that the only drugs that she and Defendant would ordinarily buy were hydrocodone or percocet. Ms. Buttram testified that she and Defendant returned with four hydrocodone pills, and everyone was sitting on the porch at the time. She did not recall if she or Defendant handed the drugs to Mr. Immons and Ms. Chambers.

Casey Immons testified that he gave the $60 to Defendant to purchase the drugs and that Defendant was driving the car when he and Ms. Buttram left. He also said that he drove to a nearby store for a soda while waiting for Defendant and Ms. Buttram to return. Mr. Immons testified that Ms. Buttram handed the drugs to him when she and Defendant returned. He agreed that the tape of the transaction indicated that the money was given to Ms. Buttram.

## II. Standard of Review

*Failure to File a Motion for New Trial*

Initially, we address the State's argument that Defendant's appeal should be dismissed because he failed to file a timely motion for new trial. Tennessee Rule of Criminal Procedure 33(b) mandates that a defendant's motion for new trial must be filed within thirty days of the date the order of sentence is entered:

> A motion for new trial shall be in writing or, if made orally in open court, be reduced to writing, within thirty days of the date the order of sentence is entered. The court shall liberally grant motions to amend the motion for new trial until the day of the hearing on the motion for new trial.

Tenn. R. Crim. P. 33(b). A trial court does not have jurisdiction to rule on a motion filed outside the thirty-day period. *State v. Bough*, 152 S.W.3d 453, 460 (Tenn. 2004). Consequently, "[i]f a motion for new trial is not timely filed, all issues are deemed waived except for sufficiency of the evidence and sentencing." *Id*. (citing *State v. Martin*, 940 S.W.2d 567, 569 (Tenn. 1997); *see also* Tenn. R. App. P. 3(e). Further, this Court does not have the authority to waive the untimely filing of a motion for a new trial. *State v. Givhan*, 616 S.W.2d 612, 613 (Tenn. Crim. App. 1980); *see also* Tenn. R. App. P. 4(a).

The record shows that while represented by counsel, Defendant filed, on July 30, 2009, a *pro se* motion titled: "APPEAL OF SENTENCING IN T.D.O.C. COMMUNITY CORRECTIONS VIOLATION." The motion listed several case numbers including the present case, and Defendant requested that the cases be appealed, and he listed reasons for the appeal. The motion was filed ten days after the judgment order of sentence was entered, and trial counsel filed an "AMENDED MOTION FOR NEW TRIAL" on January 22, 2010. At the status hearing on the motion for new trial, the State argued that a timely motion for new trial had not been filed. The State further argued that what Defendant had filed was a Tennessee Rule of Criminal Procedure Rule 35 motion for a reduction of sentence. Defense counsel asserted that while the *pro se* motion was incorrectly labeled, it was correct in substance. The trial court then heard proof concerning issues raised in the motion and held:

> I - - based on what I have heard, there is no reason to disturb the ruling of this Jury - the verdict. There has been no direct challenge to the Court's sentence. The motion, as such, whether it's falling under a motion for a new trial or a motion to resentence, has been - - is not supported, and I'm going to overrule all the pleadings in this Court currently standing in this case and allow this to go up in whatever forum the defendant chooses to take it up in. I think it's now ripe for appeal, but it may - - there may be some tangential things that must be taken up. All that being said, I am dismissing the petition as it is under 33, 35, or whatever else might be raised in this Court.

*Pro se* proceedings should be liberally construed. *Jimmie Smith v. State*, No. M2005-00623-CCA-R3-PC, 2006 WL 236950 at *1 (Tenn. Crim. App., Jan. 5, 2006). In *State v. Barrow* 130 S.W.3d 59, 63 (Tenn. Ct. App. 2003), the Court of Appeals held:

> Even though the courts cannot create claims or defenses for pro se litigants where none exists, *Rampy v. ICI Acrylics, Inc.*, 898 S.W.2d 196, 198 (Tenn. Ct. App. 1994), they should give effect to the substance, rather than the form or terminology, of a pro se litigant's papers. *Brown v. City of Manchester*, 722 S.W.2d 394, 397 (Tenn. Ct. App. 1986); *Usery v. Lewis*, 553 S.W.2d 612, 614 (Tenn. Ct. App. 1977).

In this case, although Defendant's motion contains incorrect language, we find that it could be construed as a motion for new trial due to the substance of the motion. We note that "Reason #2" of the motion contained the following language:

> Officer Barkley was working the day of my trial. All witnesses in my trial were supposed to be separated after being sworn in. Witnesses Kelly Buttram and Amanda Chambers were placed in the same cell after court broke for lunch

and we were returned to jail. Also another witness against me, Casey Emmons [sic], left with D.E.A. Agent Larry Lay, who was also a witness against me. The presiding Judge, Shayne Sexton ordered that there be no contact between witnesses.

Even though we find that Defendant's motion could be construed as a motion for new trial, we note that he was represented by counsel at the time the motion was filed. At a "Status Call" hearing on January 5, 2010, there was a discussion concerning Defendant's *pro se* motion. The following exchange took place:

| | |
|---|---|
| THE COURT: | But it was filed pro se. [Trial Counsel], have you discussed with Mr. Chappell post-sentencing proceedings in this case? |
| [TRIAL COUNSEL]: | No, your Honor. I understood that that was filed, and I got a copy of it saying that I was conflicted out. I'm assuming we're looking at the same document that I've seen saying that yeah, I used to work for the DA's office and that part of the problem with the trial was me, so I didn't feel like I should step forward and help him with post-trial stuff since I am the basis for his relief or part of it. |
| THE COURT: | Mr. Chappell, are you asking this Court to relieve [trial counsel] of his representation of you? |
| DEFENDANT: | Yes, sir. I'd like to get another lawyer. |
| THE COURT: | Did you discuss with [trial counsel] these problems before you filed this? |
| DEFENDANT: | I - - |
| THE COURT: | Do you realize that - - that first of all, this doesn't create a vehicle for relief, not really. Motions - - particularly post-sentencing motions are scheduled by statute, and I mean, [the prosecutor] has gratuitously taken this as a motion for new trial. I - - |

| | |
|---|---|
| [PROSECUTOR]: | Well, your Honor, we're bringing him before the Court basically because he continues to complain to the Clerk that no action has been taken on it, I did not regard this as a motion for new trial which is the reason we didn't even file a response. |
| | He also references several of the case numbers there which - - and he's already convicted on those matters; they're certainly not ripe for appeal. Matters stated in this pleading, even if they were valid, they were waived because they were not raised at issue at trial. There are no grounds for relief stated here. |
| THE COURT: | I agree, and that - - but the problem begins when you want to remove [trial counsel]. You're not simply entitled to another lawyer because of your - - a result that you didn't like. You are persisting in having him removed as your lawyer? |
| DEFENDANT: | Well, I have not got to talk to him, your Honor. They sent me to Claiborne County. I wasn't able to talk to him after the trial or nothing. |
| THE COURT: | [Trial Counsel], I'd like you to sit down - - I don't think it's gonna hurt anything - - and have you and Mr. Chappell talk today and figure out what - where you stand, whether or not you're gonna be able to represent him in a - - you know, the way that you want to do it. And if he persists in having you removed, then I'll decide if there is a basis for that, but I - - frankly, by doing this - by creating a conflict situation with [trial counsel], you may have jeopardized an appeal. A motion for new trial must be filed 30 days after the judgment, and if there is no motion for new trial - - and my quick take on this is the allegation made that you should be removed puts you in an ethical quandary as to how you're to approach the client. |

-6-

[TRIAL COUNSEL]: Right. It was hard for me to jump in and say, yeah, Mr. Chappell, I represent you, your attorney used to work for the DA's office, he's conflicted out. By the way, that was me, and it was never brought to my attention during the - -

THE COURT: Well, what I would love to see and I'm maybe wafting this out there - - I'd love to see this relationship restored and a proper motion for new trial filed and there would be some way to explain that this would - - this filing pro se would toll that 30 days that would allow a proper motion for new trial.

I mean, I - - you may have - - Mr. Chappell, you might be the author of your own predicament here, and I don't - - I'm trying to find a way to get you back in Court and get these issues litigated properly, but the approach that you've taken so far is very dangerous. So I'm gonna allow you all to talk a few moments.

It is obvious from the transcript that Defendant was still represented by counsel when he filed his *pro se* motion. It as long been the rule that a defendant may not be represented by counsel and simultaneously proceed *pro se. State v. Davis*, 141 S.W.3d 600, 615-16 n. 12 (Tenn. 2004)(citing *Wallace v. State*, 121 S.W.3d 652, 655 n. 2 (Tenn. 2003)); *State v. Burkhart*, 541 S.W.2d 365, 371 (Tenn. 1976). Since Defendant could not proceed *pro se*, his motion, even if it could be a motion for new trial, was a nullity. *Davis,* 141 S.W.3d at 615 n. 12. Therefore, a timely motion for new trial was not filed. *See State v. Martin*, 940 S.W.2d 567, 569 (Tenn. Crim. App. 1997); *State v. Dodson*, 780 S.W.2d 778, 780 (Tenn. Crim. App. 1989). Since a timely motion for new trial was not filed, the Notice of Appeal filed on November 18, 2010, was not timely filed. *See* T.C.A. § 27-1-123; Tenn. R. App. P. 4 (The notice of appeal is not jurisdictional in criminal cases, and the timely filing of it may be waived in the interest of justice). However, under such circumstances, any issue which has the remedy of granting a new trial can not be considered on appeal unless the issue is reviewed pursuant to being "plain error." *See State v. Smith*, 24 S.W.3d 274, 282 (Tenn. 2000); *State v. Adkisson*, 899 S.W.2d 626, 641-42 (Tenn. Crim. App. 1994). We find no plain error in the record.

A challenge to the sufficiency and issues regarding sentencing can be reviewed on appeal absent the filing of a motion for new trial, but Defendant has not presented these issues on appeal, and we find no error. *Martin*, 940 S.W.2d at 569. The issues raised on appeal by Defendant are waived.

## CONCLUSION

For the foregoing reasons, the judgment of the trial court is affirmed.

_____

THOMAS T. WOODALL, JUDGE