**John P. CAFARELLI, d/b/a Battle Creek Taxi, Car Service, Plaintiff,**

v.

**Ross YANCY, Individually and d/b/a Yellow Cab Company, Jointly and Severally, Defendants.**

**No. 4:96 CV 198.**

United States District Court, W.D. Michigan, Southern Division.

March 16, 1999.

Samuel T. Field, Field & Field, PC, Kalamazoo, MI, for John P. Cafarelli, plaintiff.

Roman T. Plaszczak, Plaszczak & Bauhof, PC, Kalamazoo, MI, for Ross Yancy, defendant.

### OPINION

ENSLEN, Chief Judge.

This case is brought pursuant to 47 U.S.C. § 605, which, in relevant part, prohibits unauthorized persons from intercepting radio communications and divulging or using the contents of those communications. Plaintiff, at relevant times, was the holder of a radio station license issued by the Federal Communications Commission. Plaintiff owned a cab company, which used radio transmissions between taxicabs and dispatchers to direct the taxicabs to fares. Plaintiff alleges that Defendant, a competing cab company owner, intercepted his dispatchers' radio communications instructing drivers as to the location of fares, and divulged that information to Defendant's drivers, causing Plaintiff's company to lose the fares. Plaintiff seeks statutory damages of $1,000 to $10,000 per violation, and alleges thousands of violations.

On December 23, 1998, the Court ordered the parties to brief the issue of the effect of 18 U.S.C. § 2511 and related stat-

utes, regulations, and case law on the potential liability of Defendant in this case. Both parties submitted briefs in this regard, and upon review of the briefs and materials submitted, as well as further research and consideration, the Court determined that Defendant is entitled to judgment as a matter of law, and that, for the same reasons, the Court lacks subject matter jurisdiction over this matter. Since *sua sponte* dismissal is inappropriate in the absence of notice to Plaintiff, however, Plaintiff was given time to show cause why judgment should not be entered in favor of Defendant.[1] *See Celotex Corp. v. Catrett,* 477 U.S. 317, 326, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The Plaintiff has submitted an additional brief.

47 U.S.C. § 605 reads, in pertinent part, as follows:

(a) Practices prohibited

**Except as authorized by chapter 119, Title 18,** no person receiving, assisting in receiving, transmitting, or assisting in transmitting, any interstate or foreign communication by wire or radio shall divulge or publish the existence, contents, substance, purport, effect, or meaning thereof, except through authorized channels of transmission or reception, (1) to any person other than the addressee, his agent, or attorney, (2) to a person employed or authorized to forward such communication to its destination, (3) to proper accounting or distributing officers of the various communicating centers over which the communication may be passed, (4) to the master of a ship under whom he is serving, (5) in response to a subpoena issued by a court of competent jurisdiction, or (6) on demand of other lawful authority. **No person not being authorized by the sender shall intercept any radio communication and divulge or publish the existence, contents, substance, purport, effect, or meaning of such intercepted communi-**cation **to any person.** No person not being entitled thereto shall receive or assist in receiving any interstate or foreign communication by radio and use such communication (or any information therein contained) for his own benefit or for the benefit of another not entitled thereto. **No person having received any intercepted radio communication or having become acquainted with the contents, substance, purport, effect, or meaning of such communication (or any part thereof) knowing that such communication was intercepted, shall divulge or publish the existence, contents, substance, purport, effect, or meaning of such communication (or any part thereof) or use such communication (or any information therein contained) for his own benefit or for the benefit of another not entitled thereto.** This section shall not apply to the receiving, divulging, publishing, or utilizing the contents of any radio communication which is transmitted by any station for the use of the general public, which relates to ships, aircraft, vehicles, or persons in distress, or which is transmitted by an amateur radio station operator or by a citizens band radio operator.

(emphasis added).

The Plaintiff in this case is proceeding under one of the two highlighted sentences in the body of the above paragraph. Of greater significance here, however, is the highlighted clause at its beginning. Chapter 119 of Title 18 is known as the Wiretap Act and includes 18 U.S.C. §§ 2510–2520. According to the first clause of § 605, acts "authorized" by the Wiretap Act are not prohibited by § 605. The circuit courts to address the issue have held that the introductory clause applies to all the subsequent parts of § 605, rather than to the first sentence alone. *See Edwards v. State Farm Ins. Co.,* 833 F.2d 535, 540 (5th

---

1. In Defendant's brief on this subject, he suggested that dismissal or summary judgment "would be appropriate," but did not move for either.

Cir.1987); *United States v. Rose*, 669 F.2d 23, 26–27 (1st Cir.1982). *See also Tyler v. Berodt*, 877 F.2d 705, 707 (8th Cir.1989).

The word "authorize," as noted by Plaintiff, is defined in BLACK'S LAW DICTIONARY 133 (6th ed.1990), as "[t]o empower; to give a right or authority to act. To endow with authority or effective legal power, warrant, or right." He omits a further segment of this definition, however, which reads, "[t]o permit a thing to be done in the future." *See also* WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY (1961) (including "to permit" in definition).

To determine whether the Wiretap Act permits interceptions of the type alleged here, we turn to the text of the Act, which provides, at 18 U.S.C. § 2511:

> (1) Except as otherwise specifically provided in this chapter any person who—
>
> \*   \*   \*   \*   \*   \*
>
> (c) intentionally discloses, or endeavors to disclose, to any other person the contents of any wire, oral, or electronic communication, knowing or having reason to know that the information was obtained through the interception of a wire, oral, or electronic communication in violation of this subsection;
>
> (d) intentionally uses, or endeavors to use, the contents of any wire, oral, or electronic communication, knowing or having reason to know that the information was obtained through the interception of a wire, oral, or electronic communication in violation of this subsection; or
>
> \*   \*   \*   \*   \*   \*
>
> shall be punished as provided in subsection (4) or shall be subject to suit as provided in subsection (5).

Exceptions to the Act's broad prohibitions are enumerated later in its text, at subsection (2):

> (g) **It shall not be unlawful under this chapter or chapter 121 of this title for any person—**
>
> (i) to intercept or access an electronic communication made through an electronic communication system that is configured so that such electronic communication is readily accessible to the general public;
>
> (ii) **to intercept any radio communication which is transmitted—**
>
> (I) by any station for the use of the general public, or that relates to ships, aircraft, vehicles, or persons in distress;
>
> (II) by any governmental, law enforcement, civil defense, **private land mobile, or public safety communications system,** including police and fire, **readily accessible to the general public;**

(emphasis added).

Taxicab radio frequencies are categorized by the Federal Communications Commission as "private land mobile." *See* 47 C.F.R. part 90, esp. § 90.93. The communications at issue here are "readily accessible to the general public" as defined at 18 U.S.C. § 2510(16). It thus appears, and Plaintiff concedes, that interception of communications such as those made by Plaintiff is permitted by the Act. Plaintiff notes that this is only the beginning of the inquiry. He states that § 605 does not prohibit interception alone, but interception in conjunction with divulging or using the communication. Thus, according to Plaintiff, the permission of interception contained in the Wiretap Act does not immunize Defendant from liability for interception *and* divulging or using under § 605.

It is not enough, however, to look only at the exceptions contained in subsection (2)(g). The Court must look at the impact of those exceptions on the prohibitions of the Wiretap Act. As noted above, like § 605, the Wiretap Act prohibits the disclosure or use of the contents of intercepted radio communications. However, the prohibition is conditioned on the initial impropriety of the interception. If the interception is not made in violation of the

Wiretap Act, then neither is the subsequent disclosure or use of the communication. *See United States v. Gass,* 936 F.Supp. 810, 815 (N.D.Okla.1996). Accordingly, Defendant's alleged interception *and* resulting disclosure and/or use of Plaintiff's communications [2] are not in violation of the Wiretap Act. As a result, they are permitted, or "authorized" by that Act, and are not prohibited by 47 U.S.C. § 605.

The Court concludes that while the language contained in each statute is somewhat different, the prohibitions of each are coextensive. The Court can discern no difference between "divulge or publish," per the language of § 605, and "disclose" under the Wiretap Act. As well, the general prohibition on "use" in the Wiretap Act must contain within it the more specific prohibition on "use ... for his own benefit" listed in § 605.

Plaintiff argues that § 2511(1) is not pertinent to the inquiry, in that it is "not exhaustive" of possible unlawful acts of interception and disclosure. This fails to see the forest for the trees. To reiterate, by § 605's terms, an act permitted by the Wiretap Act cannot simultaneously be prohibited by § 605. Interception of the type of communication at issue here, and consequential disclosure or use, are permitted by the Wiretap Act. If § 605 did not incorporate the Wiretap Act, there would be no question of potential liability; § 605's prohibitions would stand on their own. Unfortunately for Plaintiff, however, the two statutes are inextricably intertwined.

The Plaintiff raises two additional issues with regard to the § 605 immunities created by the Wiretap Act. First, and most easily resolved, he contends that a reading of the two statutes which permits the interception and divulging or use at issue here would render § 605 "superfluous." The Court is not convinced that a statute becomes superfluous simply because a particular plaintiff's claim is not contained within it. Section 605 specifically exempts those acts authorized by the Wiretap Act, and is necessarily narrowed by that exemption. *See United States v. Rose,* 669 F.2d 23, 27 (1st Cir.1982) (stating "the protective shield of § 605 is significantly diminished by incorporating the requirements of [the Wiretap Act]").

Second, and worthy of closer consideration, is Plaintiff's reference to a Federal Communications Commission Fact Sheet which addresses § 605. While he does not so phrase the issue, Plaintiff, in effect, contends that the Court should defer to the Fact Sheet's interpretation of § 605, since "considerable weight should be accorded to an executive department's construction of a statutory scheme it is entrusted to administer." *Chevron U.S.A. v. Natural Resources Defense Council,* 467 U.S. 837, 844, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984).

The Fact Sheet states that while § 605 does not prohibit interception alone:

> a violation of section [605] would occur if you divulge or publish what you hear or use it for your own or someone else's benefit. An example of using an intercepted call for a beneficial use in violation of section [605] would be someone listening to accident reports on a police channel and then sending his or her tow truck to the reported accident scene in order to obtain business.

Federal Communications Commission Fact Sheet, "Interception and Divulgence of Radio Communications," January 1997.[3] The scenario contained in the fact sheet is very similar to that alleged here. Thus, if the Fact Sheet interpretation is entitled to this Court's deference, this Court would likely determine that the Defendant's alleged acts fall within § 605's ambit. The Court is not convinced, however, that the Fact

---

2. If, indeed, they are Plaintiff's communications. *See* the Court's Order of Nov. 30, 1998, denying summary judgment.

3. The same text is contained in a Fact Sheet issued in December 1993.

Sheet is due deference. There are three reasons for this conclusion.

The first is that the issue of deference need not be reached in the first place. "When a court reviews an agency's construction of the statute which it administers, it is confronted with two questions. First, always, is the question whether Congress has directly spoken to the precise question at issue. If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress." *Chevron,* 467 U.S. at 842–43, 104 S.Ct. 2778. The Court does not find any ambiguity in the language of § 605 and the incorporated language of the Wiretap Act. While the language in each differs, the difference, as noted above, is not material.

The second reason no deference is due is that the Fact Sheet does not invite, and in fact disclaims, deference. Even assuming that an agency interpretation contained in such an informal document may be considered and accorded deference, *see Bethlehem Steel Corp. v. Bush,* 918 F.2d 1323, 1327 n. 3 (7th Cir.1990), the FCC Fact Sheet states that it:

> should *not* be used as guidance for deciding whether you can engage in any specific activity. This is because this information is too general and because there are other statutes—Federal and State—that also govern the interception of radio communications and may make an activity unlawful.... *See, e.g.* [the Wiretap Act]

(Emphasis in original). Since the Fact Sheet intrinsically acknowledges its interpretive limitations, there is no reason for the Court to go beyond what the agency expects in terms of the force of law to be accorded it.

Finally, even if the statute could be said to be ambiguous, and if the Fact Sheet were, potentially, due deference as an agency interpretation, the Court would conclude that the agency's so-called interpretation is not "based on a permissible construction of the statute." *Chevron,* 467 U.S. at 843, 104 S.Ct. 2778. A construction of § 605 which included Defendant's alleged actions would ignore the impact of the Wiretap Act on § 605, and would therefore be "manifestly contrary to the statute." [4] *Id.* at 844, 104 S.Ct. 2778. Defendant's alleged acts do not fall within the ambit of § 605, and Defendant is therefore entitled to judgment as a matter of law.

---

**4.** Of course, this conclusion is almost indistinguishable from a conclusion that the statute is clear.