*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2000 FED App. 0297P (6th Cir.)
File Name: 00a0297p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

———————————

JOHN P. CAFARELLI, d/b/a
Battle Creek Taxi, Car
Service,
      *Plaintiff-Appellant,*

No. 99-1331

*v.*

ROSS YANCY, d/b/a Yellow
Cab Company,
      *Defendant-Appellee.*

Appeal from the United States District Court
for the Western District of Michigan at Kalamazoo.
No. 96-00198—Richard A. Enslen, Chief District Judge.

Argued: August 2, 2000

Decided and Filed: September 5, 2000

Before: MOORE and CLAY, Circuit Judges; HOOD,
District Judge.[*]

———————————

[*] Honorable Denise Page Hood, United States District Judge for the
Eastern District of Michigan, sitting by designation.

1

———————————

**COUNSEL**

**ARGUED:** Samuel T. Field, Kalamazoo, Michigan, for Appellant. Daryl J. Mumford, MUMFORD, SCHUBEL, NORLANDER, MACFARLANE & BARNETT, Battle Creek, Michigan, for Appellee. **ON BRIEF:** Samuel T. Field, Kalamazoo, Michigan, for Appellant. John H. Macfarlane, MUMFORD, SCHUBEL, NORLANDER, MACFARLANE & BARNETT, Battle Creek, Michigan, for Appellee.

———————————

**OPINION**

———————————

CLAY, Circuit Judge. Plaintiff, John P. Cafarelli, d/b/a Battle Creek Taxi, Car Service, appeals from the district court's judgment *sua sponte* dismissing Plaintiff's claim seeking declaratory, injunctive, and monetary relief against Defendant, Ross Yancy, d/b/a Yellow Cab Company, under § 605 of the Federal Communications Act, 47 U.S.C. § 151 *et seq.*, for lack of subject matter jurisdiction. For the reasons set forth below, we **REVERSE** the judgment of the district court.

**I. BACKGROUND**

On October 15, 1996, Plaintiff, then proceeding *pro se*, filed a complaint in the United States District Court for the Western District of Michigan against Defendant seeking declaratory, injunctive, and monetary relief for Defendant's alleged interception of Plaintiff's taxi cab radio messages, which Defendant then allegedly appropriated for his own use. Plaintiff claimed that Defendant's unauthorized interception, reception, and conversion of Plaintiff's radio messages for Defendant's gain was a violation of § 605 of the Federal Communications Act ("Communications Act").

for the court is whether the agency's answer is based on a permissible construction of the statute.

467 U.S. 837, 842-43 (1984) (footnotes omitted). To the extent that § 2511(g)(ii)(II) is silent as to the "use" of the intercepted radio messages in question, thereby not authorizing the "use" of the same, the FCC's interpretation of § 605 as it applies to Plaintiff's claim is based upon a permissible construction of the interplay between the Wiretap Act and the Communications Act, and the FCC's determination should be given deference. *Id.*

**III. CONCLUSION**

The proper characterization of the district court's *sua sponte* dismissal of Plaintiff's claim is one for summary judgment under Fed. Rule Civ. P. 56. Because we hold that a genuine issue of material fact remains for trial as to whether Defendant violated 47 U.S.C. § 605, we **REVERSE** the district court's judgment and **REMAND** the case for trial.

radio communications, although mere interception of radio communications may violate other federal or state statutes. In other words, if you happen to overhear your neighbor's cordless telephone, you do not violate the Communications Act. Similarly, if you listen to radio transmissions on your scanner, such as emergency service reports, you are not in violation of Section 705. However, a violation of Section 705 would occur if you divulge or publish what you hear or use it for your own or someone else's benefit. An example of using an intercepted call for beneficial use in violation of Section 705, would be someone listening to accident reports on a police channel and then sending his or her tow truck to the reported accident scene in order to obtain business.

(J.A. at 67, 68).[2]

The course of this Court's review of an agency's determination of a statute is governed by *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, where the Supreme Court stated as follows:

> When a court reviews an agency's construction of the statute which it administers, it is confronted with two questions. First always, is the question whether Congress has directly spoken to the precise question at issue. If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress. If, however, the court determines Congress has not directly addressed the precise question at issue, the court does not simply impose its own construction on the statute, as would be necessary in the absence of an administrative interpretation. Rather, if the statute is silent or ambiguous with respect to the specific issue, the question

---

[2]We note that although Plaintiff submitted two FCC Fact Sheets -- one dated December of 1993, and the other dated January of 1997 -- the Fact Sheets are identical for all relevant purposes.

Acting through counsel, Defendant answered Plaintiff's complaint on August 13, 1997, after the district court set aside Plaintiff's default judgment that had been entered against Defendant for failing to respond to the complaint. After a series of orders regarding various motions which are not at issue here, the district court entered an order on May 28, 1998, which, among other things, extended the deadline for completion of discovery to October 1, 1998; ordered that mediation be completed by October 15, 1998; and extended the deadline for filing dispositive motions to November 1, 1998.

On December 24, 1998, Plaintiff, now acting through counsel, filed proposed findings of fact and conclusions of law with the district court. Plaintiff proffered that Defendant, owner of Yellow Cab Company, owned Star Charter-Battle Creek Limousine; that Star Charter owned five to ten "Greyhound" style charter buses; and that Battle Creek owned several stretch limousines. Plaintiff also proffered that Defendant owned Ross' Auto Sales, and that Defendant organized Battle Creek Taxi which, as its name implies, provides taxi cab services in the City of Battle Creek, Michigan.

Plaintiff contended that in July of 1991, Defendant sold Battle Creek Taxi to Plaintiff for $100,000. The terms of the sale were that Plaintiff would make weekly payments to Defendant in the amount of at least $500; in exchange, Plaintiff acquired the business, approximately seven motor vehicles with taxi meters, dispatch radio equipment, as well as the right to occupy space at 1434 Northeast Capital. The Federal Communications Commission ("FCC") re-issued a five-year radio station license to Plaintiff and Battle Creek Taxi on February 5, 1993, for use in connection with Battle Creek Taxi. In September of 1993, Defendant purchased Yellow Cab Company for $150,000, but this transaction was not known to Plaintiff. In December of 1993, Plaintiff still owed Defendant $30,000 on the purchase price of Battle Creek Taxi, so Defendant agreed to accept from Plaintiff

ownership of a limousine service called Black Tie Service as payment-in-full for Battle Creek Taxi.

Plaintiff further claimed that in December of 1994, Defendant began a deliberate effort to drive Plaintiff out of business by "hijacking" Plaintiff's taxi cab customers. Plaintiff alleged that Defendant intercepted Plaintiff's dispatch calls, and then appropriated the fare for his own use by sending one of his cabs, which had then been designed to look like Plaintiff's cabs, to pick up the fare before one of Plaintiff's cabs could get to it. Plaintiff alleged that a number of "no shows" is expected in the cab industry; however, the number of "no shows" experienced by Plaintiff increased from an average of 727 per month as of December of 1993, to 1,251 per month for the period of January 1, 1994 to August 31, 1994. Plaintiff attributed the increase in "no shows" to Defendant's "hijacking," and concluded that this misappropriation was a violation of § 605(a) of the Communications Act for which Defendant should be held liable.

Defendant also submitted proposed findings of fact and conclusions of law on December 24, 1998; however, Defendant's proposals were decidedly shorter than Plaintiff's proposals. Specifically, Defendant simply stated that he did not violate § 605 and was not liable to Plaintiff.

The district court then ordered the parties to submit briefs as to the effect of § 2511 of the Wire Interception and Interception of Oral Communications ("Wiretap Act"), 18 U.S.C. § 2510 *et seq.*, on this case. Plaintiff complied with the district court's order, and submitted a "Memorandum of Law Re: Effect of 18 USC § 2511" along with a "Fact Sheet" from the FCC entitled "Interception and Divulgence of Radio Communications." Defendant also submitted a brief regarding § 2511. Thereafter, on February 17, 1999, the district court entered an order directing Plaintiff to show cause why judgment should not be entered in favor of Defendant as a matter of law. Specifically, the show cause order provided in relevant part as follows:

question occurred under subsection (2), thereby making subsection (1)(c) and (d) inapplicable.

If we were to accept the district court's interpretation of §2511, the word "this," modifying the word "subsection" in the last line of § 2511(1) (c) and (d), would be rendered a meaningless nullity because the district court applies § 2511(1)(c) and (d) to subsection (2). Similarly, to accept the district court's interpretation of § 2511(2)(g)(ii)(II) would render other subparts of § 2511(2) meaningless. Specifically, although other subparts of subsection (2) authorize both the interception and use of a message, *see, e.g.,* § 2511(2)(a) and (b), subpart (g) conspicuously only authorizes the interception of the type of radio messages in question. Which is to say, because Congress expressly excluded the word "use" or "disclose" from § 2511(2)(g)(ii)(II), while expressly including those words in other subparts of subsection (2), one cannot conclude that Congress allowed for the use of intercepted messages under § 2511(2)(g)(ii)(II) without finding Congress' express inclusion of the word "use" in other subparts of subsection (2) superfluous, in violation of basic principles of statutory construction. *See Lake Cumberland Trust, Inc.,* 954 F.2d at 1222.

Because we cannot locate, nor has Defendant proffered, any other section of the Wiretap Act which would authorize the use of these type of radio messages, § 605(a)'s prohibition against using these intercepted messages for one's own benefit is applicable here. *See* 47 U.S.C. § 605 ("Except as authorized by chapter 119, Title 18 . . . .").

This interpretation of the Wiretap Act as it relates to § 605 comports with the FCC's Fact Sheet. The Fact Sheet provides in relevant part as follows:

Of those statutes that may govern interception of radio communications, the FCC only has the authority to interpret Section 705 of the Communications Act, 47 U.S.C. Section 605, "Unauthorized Publication of Communications." Section 705 of the Communications Act generally does not prohibit the mere interception of

conditional upon those acts authorized by the Wiretap Act. *See* 47 U.S.C. § 605(a) ("Except as authorized by chapter 119, Title 18 . . . ."). Moreover, the legislative history to the Crime Control Act indicates that Congress intended Chapter 119 (the Wiretap Act) to control over the Communications Act. Specifically, the legislative history states the Wiretap Act "is not intended merely to be a reenactment of section 605. The new provision is intended as a substitute. The regulation of the interception of wire or oral communications in the future is to be governed by proposed new chapter 119 of title 18, United States Code." *See* S. Rep. No. 1097, 98th Cong., 2d Sess., reprinted in 1968 U.S.C.C.A.N. 2112, 2196; *International Cablevision, Inc. v. Sykes*, 75 F.3d 123, 131 (2d Cir. 1996) (quoting Senate Report No. 1097 with approval). As with all statutes, we must interpret the Wiretap Act "as a whole, giving effect to each word and making every effort not to interpret a provision in a manner that renders other provisions of the same statute inconsistent, meaningless or superfluous." *See Lake Cumberland Trust, Inc. v. EPA*, 954 F.2d 1218, 1222 (6th Cir. 1992).

In this case, we disagree with the district court's interpretation of the Wiretap Act, because the court failed to consider § 2511 as a whole and misconstrued the provisions therein. For example, as argued by Plaintiff below, the district court erred in applying § 2511(1) to the facts of this case. The district court found subparts (c) and (d) of subsection (1) dispositive; however, the district court erred in so concluding because these subparts only apply to messages which were intercepted in violation of *this* subsection – i.e., subsection (1). Stated otherwise, the district court erroneously concluded that because Defendant did not wrongfully *intercept* the radio messages under § 2511(2)(g)(ii)(II), Defendant's *use* of the radio message was not a violation of § 2511(1)(c) and (d). The qualification in § 2511(1)(c) and (d), that the interception must be improper before the disclosure or use of the same may be found improper, only applies to interceptions made in violation of "this" subsection: subsection (1). The interception in

On December 23, 1998, the Court ordered the parties to brief the issue of the effect of 18 U.S.C. § 2511 (and related statutes, regulations, and case law) on the potential liability of Defendant in this case. Both parties have submitted briefs in this regard. Upon review of these briefs and materials submitted, and upon further research and consideration, the Court has determined that Defendant is entitled to judgment in this matter as a matter of law. However, since a *sua sponte* entry of judgment is inappropriate in the absence of notice to Plaintiff, he shall be given time to show cause why judgment should not be entered in favor of Defendant. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 326 (1986).

In order to provide complete notice to Plaintiff, the Court will outline the two primary reasons for its initial conclusion that Defendant is entitled to judgment in his favor. First, the Court's analysis focuses not only on 18 U.S.C. § 2511(2)(g)(ii)(II), but also on that subsection's impact on §§ 2511(1)(c) and (d), and the resulting effect on 47 U.S.C. § 605. It appears that in order for use or disclosure of an intercepted communication to be prohibited under § 2511(1), the initial interception must be unlawful. Since the alleged interception here is lawful, per § 2511(2)(g)(ii)(II), use or disclosure under § 2511(1) is also lawful. The interception, use, and/or disclosure of the communication is therefore "authorized" by § 2511, and is permitted, in turn, by § 605.

Second, it appears to the Court that the Federal Communications Commission Fact Sheet upon which Plaintiff relies in support of his claim is contrary to the language of the statutes, and is therefore not entitled to deference.

(J.A. at 71-72.)

On March 5, 1999, Plaintiff entered a "Memorandum of Law Filed Pursuant to Order to Show Cause Entered 2/16/99," and attached to the memorandum the FCC "Fact

Sheet" upon which Plaintiff previously relied. Thereafter, on March 16, 1999, the district court entered its opinion finding that "Defendant's alleged actions do not fall within the ambit of § 605," and thus concluded that "Defendant is entitled to judgment as a matter of law, and that, . . . the Court lacks subject matter jurisdiction over this matter." *See Cafarelli v. Yancy*, 72 F. Supp. 2d 791, 792 (W.D. Mich. 1999). The district court entered its corresponding judgment, and it is from the judgment of dismissal that Plaintiff now appeals.

## II. DISCUSSION

### A. Procedural Basis for Dismissal by the District Court

The district court concluded that because Plaintiff had not stated a viable claim under § 605 as a mater of law, the court lacked subject matter jurisdiction over Plaintiff's case. We disagree with the court's conclusion. Plaintiff filed his claim under a federal statute, 47 U.S.C. § 605(a), thus invoking federal subject matter jurisdiction. Indeed, § 605 of the Communications Act provides a jurisdictional basis upon which an aggrieved party may seek damages:

Any person aggrieved by any violation of subsection (a) of this section or paragraph (4) of this subsection may bring a civil action in a United States district court or in any other court of competent jurisdiction.

47 U.S.C. § 605(e)(3)(A) (1994). *See* 13 C. Wright, A. Miller, & E. Cooper, Federal Practice and Procedure § 3522 (2d ed. 1984); Restatement (Second) of Judgments § 11 (1982) (defining "subject matter jurisdiction" as the "authority [of the court] to adjudicate the type of controversy involved in the action"). Accordingly, because the district court had subject matter jurisdiction over this "type" of case, the court erroneously couched its dismissal as one for lack of subject matter jurisdiction.

Moreover, because the court looked beyond Plaintiff's complaint in adjudicating the case, the proper characterization

interception of a wire, oral, or electronic communication in violation of *this* subsection;

(d) intentionally uses, or endeavors to use, the contents of any wire, oral, or electronic communication, knowing or having reason to know that the information was obtained through the interception of a wire, oral, or electronic communication in violation of *this* subsection;

* * *

shall be punished as provided in subsection (4) or shall be subject to suit as provided in subsection (5).

18 U.S.C. § 2511(1)(a)-(d) (1994) (emphasis added).

Subsection (2) of § 2511 of the Wiretap Act provides exceptions to the prohibitions listed above, which include the exception under which the radio communications at issue fall, and provides in pertinent part as follows:

(g) It shall not be unlawful under this chapter or chapter 121 of this title for any person –

(i) to intercept or access an electronic communication made through an electronic communication system that is configured so that such electronic communication is readily accessible to the general public;

(ii) to intercept any radio communication which is transmitted –

(I) by any station for the use of the general public, or that relates to ships, aircraft, vehicles, or persons in distress;

(II) by any governmental, law enforcement, civil defense, private land mobile, or public safety communications system, including police and fire, readily accessible to the general public . . . .

18 U.S.C. § 2511(2)(g)(i),(ii) (1994).

The Wiretap Act expressly amended the Communications Act by making violations of the Communications Act

*communication by radio and use such communication (or any information therein contained) for his own benefit or for the benefit of another not entitled thereto. No person having received any intercepted radio communication or having become acquainted with the contents, substance, purports, effect, or meaning of such communication (or any part thereof) knowing that such communication was intercepted, shall divulge or publish the existence, contents, substance, purport, effect, or meaning of such communication (or any part thereof) or use such communication (or any information therein contained) for his own benefit or for the benefit of another not entitled thereto.* This section shall not apply to the receiving, divulging, publishing, or utilizing the contents of any radio communication which is transmitted by any station for the use of the general public, which relates to ships, aircraft, vehicles, or persons in distress, or which is transmitted by an amateur radio station operator or by a citizens band radio operator.

47 U.S.C. § 605(a) (1994) (emphasis added).

Subsection (1) of § 2511 the Wiretap Act delineates prohibited acts and provides in relevant part as follows:

**(1)** Except as otherwise provided in this chapter any person who –

  **(a)** intentionally intercepts, endeavors to intercept, or procures any other person to intercept or endeavor to intercept, any wire, oral, or electronic communication;
  **(b)** intentionally uses, endeavors to use, or procures any other person to use or endeavor to use any electronic, mechanical, or other device to intercept any oral communication when –
                                        * * *
  **(c)** intentionally discloses, or endeavors to disclose, to any other person the contents of any wire, oral, or electronic communication, knowing or having reason to know that the information was obtained through the

of the court's *sua sponte* dismissal is one for summary judgement. *See* FED. R. CIV. P. 12(b) ("[I]f . . . matters outside the pleading are presented to and considered by the court, the motion [to dismiss] shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56."); *Salehpour v. University of Tennessee*, 159 F.3d 199, 204 (6th Cir. 1998) (finding that when a district court considers matters outside the pleadings in rendering its decision on a motion to dismiss, the court is dismissing the case as one for summary judgment pursuant to Fed. R. Civ. P. 56). Here, the district court complied with the mandate of Rule 12(b) by allowing the parties reasonable time to present all material pertinent to the court's dismissal through its show cause order. *See Cafarelli*, 72 F. Supp. 2d at 792.

We will therefore review the district court's dismissal of Plaintiff's claim as one for summary judgment. This Court reviews a grant of summary judgment *de novo*. *See DePiero v. City of Macedonia*, 180 F.3d 770, 776 (6th Cir. 1999). Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c).

**B.   Substantive Basis for the District Court's Dismissal**

The district court's review of the parties' materials submitted in response the court's show cause order as to "the effect of 18 U.S.C. § 2511 and related statutes, regulations, and case law on the potential liability of Defendant in this case," solely involved principles of statutory interpretation. *See Cafarelli,* 72 F. Supp. 2d at 791-94. The court began by noting that "[a]ccording to the first clause of § 605, acts 'authorized' by the Wiretap Act are not prohibited by § 605[,and] that the introductory clause applies to all the subsequent parts of § 605, rather than to the first sentence

alone." *Id.* at 792 (citations omitted). The court then looked to the legal and common definition of the word "authorize." *Id.* From there, the court looked to the text of the Wiretap Act to determine whether interceptions of the type alleged here were permitted. *Id.*

The court specifically looked to § 2511(1) of the Wiretap Act and noted that parts (c) and (d) thereof only prohibit the disclosure or use of messages which were wrongly intercepted. *See Cafarelli*, 72 F. Supp. 2d at 793. The district court found that the interception of the type of radio messages at issue was permitted under § 2511(2)(g)(ii)(II), and therefore concluded that the use or disclosure of the same was not prohibited under the Wiretap Act pursuant to § 2511(1)(c) and (d). *Id.* at 794 (citing *United States v. Gass*, 936 F. Supp. 810, 815 (N.D. Okla. 1996)). Because the court found that both the interception and use of the type of radio messages at issue was authorized under the Wiretap Act, the court held that Plaintiff's claim under § 605 of the Communications Act failed as a matter of law inasmuch as violations under § 605 are conditioned upon those acts authorized under the Wiretap Act. *Id.*

In so holding, the district court rejected Plaintiff's claims that the court erred in interpreting the Wiretap Act because 1) § 2511(1) was not pertinent to the inquiry; 2) the court's interpretation rendered § 605 superfluous; and 3) the court's interpretation was at odds with the FCC's Fact Sheet. For the reasons set forth in the following section, we agree with Plaintiff that the district court erred in its interpretation and application of the Wiretap Act to the facts of this case.

### C.    The Wiretap Act and Its Effect on Plaintiff's Claim Brought Under § 605 of the  Communications Act

Section 605 was passed in its original form as part of the Communications Act of 1934, 47 U.S.C. § 151 *et seq*. The language of § 605 remained the same until 1968 when Congress passed the Omnibus Crime Control and Safe Streets

Act ("Crime Control Act").[1]  Title III of the Crime Control Act amended Title 18 by enacting Chapter 119 thereof, entitled "Wire Interception and Interception of Oral Communications;" Title III also amended 47 U.S.C. § 605, which currently provides in relevant part as follows:

### (a)   Practices prohibited

*Except as authorized by chapter 119, Title 18*, no person receiving, assisting in receiving, transmitting, or assisting in transmitting, any interstate or foreign communication by wire or radio shall divulge or publish the existence, contents, substance, purport, effect, or meaning thereof, except through authorized channels of transmission or reception, (1) to any person other than the addressee, his agent, or attorney, (2) to a person employed or authorized to forward such communication to its destination, (3) to proper accounting or distributing officers of the various communicating centers over which the communication may be passed, (4) to the master of a ship under whom he is serving, (5) in response to a subpena [sic] issued by a court of competent jurisdiction, or (6) on demand of other lawful authority.  No person not being authorized by the sender shall intercept any radio communication and divulge or publish the existence, contents, substance, purport, effect, or meaning of such intercepted communication to any person.  *No person not being entitled thereto shall receive or assist in receiving any interstate or foreign*

---

[1] The Omnibus Crime Control and Safety Act of 1968, is divided into five titles:   Title I, Law Enforcement; Title II, Admissibility of Confessions, Reviewability of Admission in Evidence of Confessions in State Cases, Admissibility of Evidence of Eyewitness Testimony, and Procedures in Obtaining Writs of Habeas Corpus; Title III, Wiretapping and Electronic Surveillance; Title IV, State Firearms Control Assistance; and Title V, General Provisions.  *See* S.Rep. No. 1097, 90th Cong., 2d Sess., reprinted in 1968 U.S.C.C.A.N 2112, 2113.  Title III legislation was drafted to conform to the constitutional standards set out in *Berger v. New York*, 388 U.S. 41 (1967) and *Katz v. United States*, 389 U.S. 347 (1967).  *See id.*