IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
March 24, 2026 Session

## IN RE JORDAN A. ET AL.

**Appeal from the Chancery Court for Coffee County
No. 2024-CV-245   Robert Thomas Carter, Judge**

_____

**No. M2025-00960-COA-R3-PT**

_____

This appeal requires us to determine whether the Tennessee trial court's orders on telephone visitation and fees remain justiciable in light of the Colorado permanent custody order.  Appellant/Father appeals the trial court's grant of Appellee/maternal aunt and uncle's motion for telephone visits with the minor children.  Appellant also appeals the trial court's denial of his motion for abusive civil action and attorney's fees and costs.  Because the custody of the children was adjudicated by the Colorado court, Appellant's issues regarding telephone visitation are moot.  Furthermore, we conclude that the trial court did not err in denying Appellant's claims for abusive civil action and attorney's fees and costs.  Affirmed.

**Tenn. R. App. 3 Appeal as of Right; Judgment of the Chancery Court
Affirmed and Remanded**

STEVEN W. MARONEY, J., delivered the opinion of the court, in which KRISTI M. DAVIS and VALERIE L. SMITH, JJ., joined.

Zachary L. Smith, Manchester, Tennessee, for the appellant, Bernard A.[1]

Callie K. Hinson, Benjamin C. Aaron, Jeffrey A. Zager, and Morgan L. Burkett, Nashville, Tennessee, for the appellees, Dorothy C. and Ezekiel C.

### OPINION

### I. Background

_____

[1] In cases involving minor children, it is the policy of this Court to redact the parties' names to protect their identities.

Jordan A. and June A. are the children of Leigh K. ("Mother") and Appellant Bernard A. ("Father"), who resides in Colorado. Appellees, Dorothy C. and Ezekiel C, are the children's maternal aunt and uncle; they reside in Tennessee. The children's Mother died in 2023. While Mother was ill and near the end of her life, Father voluntarily relinquished custody of the children to the Appellees, who then brought the children from Colorado to Tennessee.

In December 2023, following the death of the children's Mother, the Appellees filed a petition for custody of the children in the Coffee County Juvenile Court. Subsequently, Father initiated separate proceedings in Colorado by filing a petition alleging that the children had been "abducted" by the Appellees.

On June 7, 2024, the Coffee County Juvenile Court entered an order on the Appellees' petition. The juvenile court found that, although Father was not abusive, he "was not a very attentive parent" and "did not have the motivation or wherewithal to take care of two small children." The juvenile court also found that Jordan was "dependent and neglected" under the statute. The juvenile court found that "a return to [Father] at this time would threaten these children with mistreatment as contemplated by the emergency jurisdiction provisions of the [Uniform Child Custody Jurisdiction and Enforcement Act ("UCCJEA")]. As such, the juvenile court continued custody with the Appellees until September 15, 2024, or until the Colorado court assumed jurisdiction. There is nothing in the record to demonstrate, nor has it been asserted that Father appealed the juvenile court's order.

Giving rise to the instant appeal, on June 14, 2024, Appellees filed a petition in the Coffee County Chancery Court ("trial court") seeking termination of Father's parental rights and adoption. As grounds, they alleged that Father abandoned the children by failure to visit and support. The Appellees also filed a motion in the Colorado action to stay those proceedings, and the Colorado court granted their motion. The petition seeking termination of Father's parental rights was heard on January 8 and 9, 2025. At the conclusion of the hearing, the trial court orally ruled that the Appellees had not established grounds, that the petition would be dismissed, and that a written order would be forthcoming. The trial court's written order was entered April 15, 2025, and it included an order that the children be returned to Father's custody that day.

On March 18, 2025, Appellees filed a motion in the trial court asking for weekly telephone contact with the children, and for the children's maternal grandmother to be able to participate in those calls. On April 15, 2025, the trial court entered a separate order granting the Appellees telephone contact. On May 27, 2025, the trial court entered an amendment to its April 15, 2025 order, allowing maternal grandmother to participate in the calls.

On May 2, 2025, the Appellees filed a motion to set aside the trial court's April 15, 2025 order denying their petition to terminate Father's parental rights. On May 14, 2025, Father filed a response in opposition to the motion to set aside, wherein he asked (for the first time established in the record) that the trial court find the Appellees to be abusive civil plaintiffs based on Father's averment that they "come to the Court seeking yet a third attempt at wrongfully taking children that do not belong to them, and . . . continue[] [to engage in] multi-jurisdictional harassment of Father through filing meritless c]aims." By order of May 27, 2025, the trial court denied Appellees' motion to set aside; by the same order, the trial court denied Father's abusive civil action motion and his request for attorney's fees.

As noted, the Colorado abduction case was stayed to allow this termination case to proceed in Tennessee. On March 11, 2025, after the trial court announced its oral ruling and forthcoming written order, the Appellees filed a motion in Colorado asking the court to award them primary parenting and decision-making responsibilities for the children. Despite the proceedings in Tennessee, the Colorado court determined that, because there was not a permanent custody or parental responsibilities order that considered the children's best interests, it had the authority to decide the issue and to enter an order regarding permanent custody and parental responsibilities in the best interests of the children.

A hearing in the Colorado case took place on September 22, 2025. On November 16, 2025, the Colorado court entered an order, wherein it concluded that it is in the best interests of the children for the Appellees to be awarded primary custody and sole decision-making authority. The Colorado court ordered Father to return the children to the Appellees no later than November 23, 2025, which he did. The children have resided with the Appellees since that time.

## II. Issues

Father raises the following issues for review as stated in his brief:

I. Whether the trial court had statutory authority to grant visitation to the non-parents after denial of their Termination of Parental Rights Petition.
II. Whether the trial court erred in awarding grand-parent visitation when requested by a party without standing to bring a grandparent visitation claim.
III. Whether the trial court erred in denying attorney fees to the Father pursuant to Tenn. Code Ann. § 36-6-236.
IV. Whether the trial court erred in denying the request for the finding of an abusive civil plaintiff against the Appellees.

## III. Telephone Visitation Issues

Appellant asserts that the trial court erred in granting telephone visitation to Appellees and to the children's maternal grandmother. In view of the Colorado court's order granting custody to the Appellees, we conclude that Appellant's first two issues are moot.

In *City of Memphis v. Hargett*, 414 S.W.3d 88 (Tenn. 2013), the Tennessee Supreme Court explained:

> This Court must first consider questions pertaining to justiciability before proceeding to the merits of any remaining claims. *See UT Med. Grp., Inc. v. Vogt*, 235 S.W.3d 110, 119 (Tenn. 2007) (noting that justiciability is a threshold inquiry). The role of our courts is limited to deciding issues that qualify as justiciable, meaning issues that place some real interest in dispute, *Colonial Pipeline Co. v. Morgan*, 263 S.W.3d 827, 838 (Tenn. 2008), and are not merely "theoretical or abstract," *Norma Faye Pyles Lynch Family Purpose LLC v. Putnam Cnty.*, 301 S.W.3d 196, 203 (Tenn. 2009). A justiciable issue is one that gives rise to "a genuine, existing controversy requiring the adjudication of presently existing rights." *Vogt*, 235 S.W.3d at 119 . . . .
>
> ***
>
> To be justiciable, an issue must be cognizable not only at the inception of the litigation but also throughout its pendency. *Norma Faye Pyles Lynch Family Purpose LLC*, 301 S.W.3d at 203-04. An issue becomes moot if an event occurring after the commencement of the case extinguishes the legal controversy attached to the issue, *Lufkin v. Bd. of Prof'l Responsibility*, 336 S.W.3d 223, 226 (Tenn. 2011), or otherwise prevents the prevailing party from receiving meaningful relief in the event of a favorable judgment, *see Knott v. Stewart Cnty.*, 185 Tenn. 623, 207 S.W.2d 337, 338 (1948); *Cnty. Of Shelby v. McWherter*, 936 S.W.2d 923, 931 (Tenn. Ct. App. 1996).

*Hargett*, 414 S.W.3d at 96*.*

In other words,

> [a] moot case is one that has lost its justiciability because it no longer involves a present, ongoing controversy. *McCanless v. Klein*, 188 S.W.2d 745, 747 (Tenn. 1945); *County of Shelby v. McWherter*, 936 S.W.2d 923, 931 (Tenn. Ct. App. 1996). A case will be considered moot if it no longer serves as a means to provide some sort of judicial relief to the prevailing party. *Knott v. Stewart County*, 207 S.W.2d 337, 338-39 (Tenn. 1948); *Ford Consumer Fin. Co. v. Clay*, 984 S.W.2d 615, 616 (Tenn. Ct. App. 1998). In

- 4 -

other words, "[m]ootness results when events occur during the pendency of a litigation which render the court unable to grant the requested relief." *Carras v. Williams*, 807 F.2d 1286, 1289 (6th Cir. 1986).

Determining whether a case is moot is a question of law. *Alliance for Native American Indian Rights in Tennessee, Inc*. [*v. Nicely*], 182 S.W.3d 333, 339 (Tenn. Ct. App. 2005). An appellate court "will dismiss appeals as moot when 'by a court decision, acts of parties, or other causes occurring after the commencement of the action the case has lost its controversial character.'" *West v. Vought Aircraft Industries, Inc.*, 256 S.W.3d 618, 625 (Tenn. 2008) (quoting *McCanless*, 188 S.W.2d at 747 (Tenn. 1945)).

*Tennessee Democratic Party v. Hamilton Cnty. Election Commission*, No. E2018-01721-COA-R3-CV, 2020 WL 865282, *2 (Tenn. Ct. App. Feb. 21, 2020).

However, the Tennessee Supreme Court has recognized

a limited number of exceptional circumstances that make it appropriate to address the merits of an issue notwithstanding its ostensible mootness: (1) when the issue is of great public importance or affects the administration of justice; (2) when the challenged conduct is capable of repetition and evades judicial review; (3) when the primary dispute is moot but collateral consequences persist; and (4) when a litigant has voluntarily ceased the challenged conduct*. Lufkin*, 336 S.W.3d at 226 n. 5 (citing *Norma Faye Pyles Lynch Family Purpose LLC*, 301 S.W.3d at 204).

*Hargett*, 414 S.W.3d at 96.  From our review, none of these exceptions is applicable here.

As noted above, after Appellant filed his notice of appeal to this Court on June 25, 2025, the Colorado court entered an order on November 16, 2025.  The Colorado order awarded custody to the Appellees and further ordered that the children would remain in Tennessee, where Father's visitation would occur.  In addition to in-person visitation in Tennessee, the Colorado court also granted Father telephone visitation.

As the Colorado court noted in its order, it took jurisdiction over the case based on its findings that, although the Tennessee court had entered orders in the case, it had not entered "a permanent custody or parental responsibilities order that considered the children's best interest."  We agree.  In the absence of a permanent custody order, the Tennessee court did not have continuing exclusive jurisdiction over this case, Tenn. Code Ann. § 36-6-217(a), and the Colorado court's permanent custody order takes precedence over the Tennessee court's telephone visitation order.

Nonetheless, at oral argument before this Court, Appellant asserted that the Colorado order was currently under appeal.  However, there is nothing in the appellate

- 5 -

record to support Appellant's contention regarding the status of the Colorado custody order. "Parties have the responsibility to see to it that the record contains the evidence necessary to support their arguments on appeal." *Levine v. March*, 266 S.W.3d 426, 439 (Tenn. Ct. App. 2007). This burden falls on the party asserting error: "This Court's review is limited to the appellate record and it is incumbent upon the appellant to provide a record that is adequate for a meaningful review." *Tanner v. Whiteco, L.P.*, 337 S.W.3d 792, 796 (Tenn. Ct. App. 2010). Accordingly, we cannot consider any appeal that may be pending in Colorado and may only consider the effect of the Colorado custody order, which is included in the record.

From its order, the Colorado court settled the custody issue in favor of Appellees. This ruling rendered Appellant's issues regarding the Tennessee order granting Appellees' telephone visitation moot. In other words, the Colorado custody order extinguished the legal controversy regarding Appellees' visitation rights. *Hargett*, 414 S.W.3d at 96 (citing *Lufkin*, 336 S.W.3d at 226). In view of the Colorado order, this Court can provide no judicial relief by addressing the trial court's telephone communication orders. *Tennessee Democratic Party*, 2020 WL 865282, *2 (citing *Carras*, 807 F.2d at 1289) ("Mootness results when events occur during the pendency of a litigation which render the court unable to grant the requested relief."). As such, we decline to address the trial court's grant of telephone visitation to Appellees and maternal grandmother.

### IV. Abusive Civil Action

Tennessee Code Annotated section 29-41-101 defines abusive civil action and abusive civil plaintiff, in relevant part, as follows:

(1) "Abusive civil action" means a civil action filed by a plaintiff against a defendant with whom the plaintiff shares a civil action party relationship primarily to harass or maliciously injure the defendant and at least one (1) of the following factors are applicable:

(A) Claims, allegations, and other legal contentions made in the civil action are not warranted by existing law or by a reasonable argument for the extension, modification, or reversal of existing law, or the establishment of new law;
(B) Allegations and other factual contentions made in the civil action are without the existence of evidentiary support; or
(C) Issue or issues that are the basis of the civil action have previously been filed in one (1) or more other courts or jurisdictions by the same, and the actions have been litigated and disposed of unfavorably to the plaintiff;

(2) "Abusive civil action plaintiff" means a person who files a civil action that a court of record has determined to be an abusive civil action and against

whom prefiling restrictions have been imposed pursuant to this chapter;

(3) "Civil action" means a civil action, as defined in Rule 2 of the Tennessee Rules of Civil Procedure;

(4) "Civil action defendant" means a person or persons against whom a civil action has been filed that a court of record has determined to be an abusive civil action and imposed prefiling restrictions against the abusive civil action plaintiff pursuant to this chapter;

(5) "Civil action party relationship" means the plaintiff commencing a civil action and the civil action defendant fall within one (1) of the following categories:

(A) Adults who are current or former spouses;

(B) Adults who live together or who have lived together;

(C) Adults who are dating or who have dated or who have or had a sexual relationship. As used in this subdivision (5)(C), "dating" and "dated" do not include fraternization between two (2) individuals in a business or social context;

(D) Adults related by blood or adoption;

(E) Adults who are related or were formerly related by marriage; or

(F) Adult children of a person in a relationship that is described in subdivisions (5)(A)-(E). . . .

This Court has previously explained the standard of review for abusive civil action suits as follows:

> Our review of that decision requires us to apply a statute to the facts, presenting a mixed question of law and fact, and is thus reviewed de novo, with no presumption of correctness accorded to the trial court's decision. **Lance v. York**, 359 S.W.3d 197, 201 (Tenn. Ct. App. 2011). In this type of review, appellate courts have "'great latitude to determine whether findings as to mixed questions of fact and law made by the trial court are sustained by probative evidence on appeal.'" **Id.** (quoting **Aaron v. Aaron**, 909 S.W.2d 408, 410 (Tenn. 1995)).

**Wilson v. Wilson**, No. M2021-01307-COA-R3-CV, 2022 WL 2963222, at *5 (Tenn. Ct. App. July 27, 2022).

Tennessee Code Annotated section 29-41-103(a) provides that a claim for abusive civil action may be raised by the defendant: "(1) In the answer to the civil action; or (2) By motion made at any time during the civil action." Relying on this statute, Appellees first assert that Appellant failed to raise his abusive civil action claim by appropriate answer or motion in the trial court. Specifically, they argue that "Father only made mention of the abusive civil action statute in response to the [Appellees'] Motion to Set Aside Final

Order/Motion to Vacate Final Order/Motion to Amend Final Order." From our review, we agree that Appellant first argues for a finding of abusive civil action in his response to Appellees' motion to set aside the trial court's order. Therein, Appellant asserts that Appellees "come to the Court seeking yet a third attempt at wrongfully taking children that do not belong to them, and as such, should be found as Abusive Civil Plaintiffs for the continued multi-jurisdictional harassment of Father through filing meritless claims."

As used in section 29-41-103(a)(2), a party asserting an abusive civil action claim must do so "[b]y motion made at any time during the civil action." Standing alone, the adverbial phrase, "at any time during the civil action," is broad and would seem to indicate that Appellant's inclusion of his abusive civil action claim in his response to Appellees' motion for new trial would be timely because it was made "during the civil action."[2] However, in construing statutes, courts are charged to read them in context. As the Tennessee Supreme Court has explained:

> [W]hen multiple statutes "relate to the same subject matter or have a common purpose," they are to be considered *in pari materia*. **In re Kaliyah S.**, 455 S.W.3d 533, 552 (Tenn. 2015). This principle requires courts to construe statutes "together" and "to give the intended effect to both" statutes. **Id.** at 548, 552. Under such circumstances, we seek to uncover "the most 'reasonable construction which avoids statutory conflict and provides for harmonious operation of the laws.'" **Id**. at 552 (quoting **Carver v. Citizen Utils. Co.**, 954 S.W.2d 34, 35 (Tenn. 1997)). Aligned with the related-statutes canon of statutory interpretation, it is "based upon a realistic

---

[2] Although Appellant does not specifically raise the abusive civil action claim by "motion" as contemplated in the statutes, in his response to Appellees' Tennessee Rule of Civil Procedure 59 motion, he asks for the following relief: "That Petitioners be found to be Abusive Civil Plaintiff's pursuant to Tenn. Code Ann. § 29-41-101." As this Court has previously recognized, the Tennessee Rules of Civil Procedure "do not require and, in fact, admonish courts against exalting form over substance." **Anderson v. DTB Corp.**, No. 89-172-II, 1990 WL 33380, at *2 (Tenn. Ct. App. Mar. 28, 1990). Indeed, courts are not bound by the title of a pleading. **Bemis Co., Inc. v. Hines**, 585 S.W.2d 574, 576 (Tenn.1979); **Estate of Doyle v. Hunt**, 60 S.W.3d 838, 842 (Tenn. Ct. App. 2001). Rather, the court is to give effect to the pleading's substance and treat it according to the relief sought therein. **Estate of Doyle**, 60 S.W.3d at 842 (citing **Norton v. Everhart**, 895 S.W.2d 317 (Tenn.1995); **Fann v. City of Fairview**, 905 S.W.2d 167 (Tenn. Ct. App. 1994). As the Tennessee Supreme Court has explained, it is well settled that "a trial court is not bound by the title of the pleading[] but has the discretion to treat the pleading according to the relief sought." **Norton**, 895 S.W.2d at 319 (citing **Fallin v. Knox County Bd. of Comm'rs**, 656 S.W.2d 338, 342 (Tenn. 1983); **State v. Minimum Salary Dep't of A.M.E. Church**, 477 S.W.2d 11, 12 (Tenn.1972)). This liberal principle of construction is to be applied to pleadings as well as motions. **Anderson**, 1990 WL 33380, at *2. Accordingly, the fact that Appellant's claim of abusive civil action is not contained in a motion, per se, is not fatal. Applying the foregoing holdings, and in view of the relief sought in Appellant's response, we may construe it as a motion for abusive civil action. From the trial court's order denying Appellees' Rule 59 motion, it, too, treated Appellant's response as a motion for abusive civil action, to-wit: "[T]he **Motion** of Respondent for attorney fees, court cost and putative damages as against the Movants herein should be denied" (emphasis added).

- 8 -

assessment of what the legislature ought to have meant," and is derived from the expectations that "the body of the law should make sense" and that "it is the responsibility of the courts, within the permissible meanings of the text, to make it so." Antonin Scalia & Bryan A. Garner, Reading Law: The Interpretation of Legal Texts 252 (2012).

*Falls v. Goins*, 673 S.W.3d 173, 180 (Tenn. 2023).

Reading section 29-41-103(a)(2) *in pari materia*, the following section of the statutory scheme, Tennessee Code Annotated section 29-41-104, contemplates a hearing on a motion for abusive civil action. This section states that such hearing may be granted "if the defendant to a civil action alleges, either by answer to the civil action or by motion made **at any time the action is pending,** that the action constitutes an abusive civil action and that the person filing the action is an abusive civil action plaintiff, the court shall conduct a hearing to determine the merits of the defendant's allegations." Tenn. Code Ann. § 29-41-104(a) (emphasis added). Section 29-41-103(a)(2)'s "at any time during the civil action" is broader than section 29-41-104(a)'s "at any time the action is pending." Black's Law Dictionary defines "pending" as "[r]emaining undecided; awaiting decision[; or] under consideration." Black's Law Dictionary (12th ed. 2024); *accord* Bryan Garner, A Dictionary of Modern Legal Usage 648 (2d ed. 1995) (defining "pend," in part, as "to be awaiting decision").

Here, Appellant raised his abusive civil action claim in a response to Appellees' Tennessee Rule of Civil Procedure 59 motion.[3] As set out in Rule 59.02, "[a] motion for new trial and all other motions permitted under this rule [*i.e.,* Rule 59] shall be filed and served within thirty (30) days **after judgment has been entered** . . . ." Tenn. R. Civ. P. 59.02 (emphasis added). Applying the definitions of "pending," *supra*, after the judgment is entered, the lawsuit is no longer "undecided[,] awaiting decision[, or] under consideration." Accordingly, it appears that Appellant's attempt to raise a claim for abusive civil action was made too late, *i.e.* not while the civil action was pending but after it was decided. This reading of sections 29-41-103(a)(2) and 29-41-104(a) is in keeping with the Tennessee Supreme Court's mandate that, we must interpret a statute "as a whole, giving effect to each word and making every effort not to interpret a provision in a manner that renders other provisions of the same statute inconsistent, meaningless or superfluous." *Culbreath v. First Tenn. Bank Nat'l Ass'n*, 44 S.W.3d 518, 524 (Tenn. 2001) (quoting *Cafarelli v. Yancy*, 226 F.3d 492, 499 (6th Cir. 2000)).

---

[3] In their motion, Appellees' request that, "[T]his cause be vacated and/or that the Final Order be set aside as to the issue of termination of parental rights or in the alternative trial court allows amendment to the Final Order to accurately reflect all testimony other evidence given in this cause . . . ." Although the motion does not specify, in view of the relief sought, we construe Appellees' motion as either a Tennessee Rule of Civil Procedure 59.04 motion to alter or amend the final judgment, or a Rule 59.07 motion for a new trial.

Furthermore, construing sections 29-41-103(a)(2) and 29-41-104(a) to require motions for abusive civil action to be brought before entry of a final judgment is in keeping with the purposes of Tennessee Rule of Civil Procedure 59. "As this Court has explained, post-judgment motions [e.g., a Rule 59 motion, and, by extension, any response thereto] should not be used to raise or present new, previously untried or unasserted theories or legal arguments." *Robinson v. City of Clarksville*, 673 S.W.3d 556, 567 (Tenn. Ct. App. 2023) (citing *In re M.L.D.*, 182 S.W.3d 890, 895 (Tenn. Ct. App. 2005)).

Based on the foregoing analysis, Appellant's motion for abusive civil action likely was untimely as it was not brought during the pendency of the lawsuit, and it also attempted to raise new theories in violation of Tennessee Rule of Civil Procedure 59. However, from our review, the trial court addressed Appellant's motion substantively. Accordingly, in the interest of full adjudication of the appeal, we will review the trial court's findings on Appellant's abusive civil action claim.

In its May 27, 2025 order denying Appellees' Rule 59 motion, the trial court held that Appellant's "motion for attorney fees, court costs, and punitive damages for the alleged abuse of civil litigation as against [Appellees] be denied" because "there is no motive on the part of [Appellees] in this cause other than their desire to address all possible legal remedies and to present argument of their position, post-trial and otherwise, all of which the Court finds was conducted in good faith and not for the purpose of harassing or causing intentional or wrongful harm to [Appellant]."

As set out above, Tennessee Code Annotated section 29-41-101(a) provides that a claim for abusive civil action may lie where "a civil action is filed . . . primarily to harass or maliciously injure the defendant." The statute goes on to define "harass or maliciously injury" as follows:

(6) "Harass or maliciously injure" means the civil action determined to be an abusive civil action was filed with the intent or was primarily designed to:

(A) Exhaust, deplete, impair, or adversely impact the civil action defendant's financial resources unless:

\*\*\*

(B) Prevent or interfere with the ability of the civil action defendant to raise a child or children for whom the civil action defendant has legal custody in the manner the civil action defendant deems appropriate unless the civil action plaintiff has a lawful right to interfere and a good faith basis for doing so;
(C) Force, coerce, or attempt to force or coerce the civil action defendant to agree to or make adverse concessions concerning financial, custodial,

- 10 -

support, or other issues when the issues in question have been previously litigated and decided in favor of the civil action defendant;

(D) Force, coerce, or attempt to force or coerce the civil action defendant to alter, engage in, or refrain from engaging in conduct when the conduct is lawful and is conduct in which the civil action defendant has the right to engage;

(E) Impair, or attempt to impair the health or well-being of the civil action defendant or a dependent of the civil action defendant;

(F) Prevent, interfere, or adversely impact the ability of the civil action defendant to pursue or maintain a livelihood or lifestyle at the same or better standard as the civil action defendant enjoyed prior to the filing of the action primarily for the purpose of harassing or maliciously injuring the civil action defendant; or

(G) Impair, diminish, or tarnish the civil action defendant's reputation in the community or alienate the civil action defendant's friends, colleagues, attorneys, or professional associates by subjecting parties without knowledge of or not reasonably relevant to the civil action to unreasonably or unnecessarily complex, lengthy, or intrusive interrogatories or depositions.

Tenn. Code Ann. §§ 29-41-101(6)(A)-(G).

From our review of the record, we agree with the trial court's conclusion that there is nothing to suggest that Appellees brought the instant lawsuit to harass or maliciously injure Appellant, or with the intent to accomplish any of the objectionable goals enumerated in Tennessee Code Annotated sections 29-41-101(6)(A) through (G). Rather, as the trial court found, it appears that Appellees acted in the best interests of the children to ensure the most stable custody arrangement following the death of their Mother. As such, we affirm the trial court's finding that Appellees were not abusive civil plaintiffs.

### V. Attorney's Fees

Having determined that the trial court correctly denied Appellant's claim for abusive civil action, he is not entitled to attorney's fees pursuant to Tennessee Code Annotated section 29-41-106(b) (mandating the award of "attorney fees and all reasonable costs of defending the abusive civil action" to a successful abuse of civil action defendant).

Appellant also requested attorney's fees and costs under the UCCJEA. Tennessee Code Annotated section 36-6-236 permits a court to award "necessary and reasonable expenses," including attorney's fees, to the prevailing party but only in certain UCCJEA proceedings. Specifically, section 36-6-236 applies to enforcement-related proceedings. The instant appeal arises from a termination of parental rights proceeding. As such, this case is one of child custody and is not an enforcement-related proceeding as contemplated under the UCCJEA. Tenn. Code Ann. § 36-6-205(4) ("'Child custody proceeding' includes

a proceeding for . . . *termination of parental rights*, . . . in which the issue may appear. 'Child custody proceeding' *does not include a proceeding involving . . . enforcement under Part 3 of this chapter*[.]") (emphases added).

Because this case does not involve an enforcement-related proceeding, as defined in the UCCJEA, section 36-6-236 does not apply. *See* **Brooks v. Andrews**, No. W2021-00106-COA-R10-JV, 2021 WL 6111863, at \*18 (Tenn. Ct. App. Dec. 27, 2021) (rejecting a similar argument invoking section 36-6-236 in a custody proceeding and confirming that the statute cannot be applied in proceedings that do not arise under the UCCJEA's enforcement provisions). Accordingly, we affirm the trial court's denial of Appellant's request for attorney's fees and costs.

## VI. Conclusion

For the foregoing reasons, the trial court's order is affirmed, and the case is remanded for such further proceedings as may be necessary and are consistent with this opinion. Costs of the appeal are assessed to the Appellant, Bernard A. Execution for costs may issue if necessary.

s/ Steven W. Maroney
STEVEN W. MARONEY, JUDGE